A95A0166. KING v. THE STATE.
(459 SE2d 605)

McMURRAY, Presiding Judge.

Defendant was charged with possession of less than one ounce of marijuana in violation of Georgia's Controlled Substances Act. Defendant filed a motion to suppress the suspected marijuana, contending law enforcement officers unlawfully entered his home in the early morning hours of April 30, 1994, without consent and without a search warrant. The trial court denied the motion to suppress, finding that exigent circumstances arose while a deputy sheriff was attempting to execute an arrest warrant (for defendant's former house-mate) which authorized the deputy's "*de minimis* entry into the house to ensure his safety." We granted this interlocutory appeal because the

circumstances do not support the trial court's finding that exigent circumstances arose authorizing the deputy's warrantless intrusion into defendant's home.

The evidence adduced at a hearing on defendant's motion to suppress reveals the following: At about 2:30 in the morning on April 29, 1994, Deputy Martin Carlisle Tischner of the Clayton County Sheriff's Department went to defendant's home to execute a warrant for the arrest of Dwayne Lee Smith, a former tenant at defendant's house. Deputy Tischner knocked on the front door, watched defendant (through a window) approach this entrance and then observed defendant retreat "momentarily out-of-sight . . . and [return] to the door to answer it. The deputy identified himself and showed [defendant] the warrant for Smith. [Defendant informed the deputy] that Smith was no longer a resident of [his house;] that he . . . had 'kicked him out' and [that] some of Smith's personal items [were] located on the porch of the house, near to where they were standing." Defendant then allowed Deputy Tischner into the house, but the deputy's search only revealed items of personal property in the room where Smith formerly resided. Before leaving, however, defendant advised Deputy Tischner of Smith's last known place of employment and a business establishment where Smith "sometimes 'hangs out.' "

Suspecting that defendant was secreting Smith's whereabouts, Deputy Tischner returned to defendant's home at 6:30 the next morning (April 30, 1994) with Clayton County Deputy Sheriff Mark Anthony Jordan. This time, Deputy Tischner covered the side and back of the house while Deputy Jordan went to the front door and summoned defendant. When defendant opened the door, Deputy Jordan "asked [whether Dwayne Lee Smith] was at that residence and [defendant] started to back up in the doorway." Deputy Jordan then "told [defendant that he] needed to come in and discuss this [with] him." Defendant did not respond. He simply "started backing up into the living room. At that point, [Deputy Jordan] entered . . . into the door frame or into the threshold of the residence . . ." and, after stepping about "two-and-a-half, three feet[,]" he "happened to look on the coffee table in the middle of the living room and noticed a Wendy's cup . . . with a clear plastic baggy with a green leafy material inside of it." When Deputy Jordan questioned defendant about the contents of this vessel, defendant "grabbed the cup [and] shoved it up underneath the couch." Deputy Jordan instructed defendant to retrieve the object. Defendant complied, but the cup came up empty. The deputy then reached under the sofa and seized a plastic bag containing a substance which appeared to be marijuana. *Held*:

In *Steagald v. United States*, 451 U. S. 204 (101 SC 1642, 68 LE2d 38), the United States Supreme Court "held that an arrest warrant as opposed to a search warrant is inadequate to protect the

Fourth Amendment interests of persons not named in the warrant, when their homes are searched without their consent and in the absence of exigent circumstances. The Supreme Court noted that 'Whatever practical problems (in requiring a search warrant in such cases) cannot out-weigh the constitutional interests at stake . . . (T)he right protected — that of presumptively innocent people to be secure in their homes from unjustified, forcible intrusions by the Government — is weighty.' *Steagald*, supra, 451 U. S. at 222." *Otwell v. State*, 201 Ga. App. 71, 72 (410 SE2d 178).

In the case sub judice, it is undisputed that Deputy Jordan did not have consent or a search warrant when he entered defendant's home at 6:30 in the morning on April 30, 1994. Further, we find Deputy Jordan's testimony insufficient to support the trial court's finding that exigent circumstances arose which required the deputy's *"de minimis* entry into the house to ensure his safety."

"[A]n exigent circumstance which does justify the warrantless entry of a private home is the officer's reasonable belief that such action is a necessary response on his part to an emergency situation." *Coker v. State*, 164 Ga. App. 493, 495 (5), 496 (297 SE2d 68). In the case sub judice, there is no evidence that defendant made threatening moves or gestures during his early morning encounter with Deputy Jordan, and Deputy Jordan failed to explain why it was necessary for him to advance into defendant's house "for [his] safety." Deputy Jordan merely testified that defendant appeared to be "[a]gitated" and that he stepped into the house when defendant "started backing up into the living room." While these circumstances may provide some remote support for Deputy Jordan's subjective belief that defendant posed an immediate threat to his safety, it cannot be reasonably said that the deputy's advance into defendant's home was a necessary (or wise) response to any perceived threat posed by defendant. Defendant's "agitation" at 6:30 in the morning, after having twice informed the police that Smith no longer resided with him (even proving this fact to Deputy Tischner the day before), and defendant's backing into his home, certainly did not put the deputy in jeopardy so as to require him to step inside the defendant's home for his "safety." Under these circumstances, the best that can be said is that Deputy Jordan walked into defendant's house without permission. It is therefore obvious that the deputy entered defendant's home in the absence of consent or exigent circumstances. "Except in such special situations, [the United States Supreme Court has] consistently held that the entry into a home to conduct a search or make an arrest is unreasonable under the Fourth Amendment unless done pursuant to a warrant. See Payton v. New York, 445 U. S. 573, 63 LE2d 639, 100 SC 1371 (1980); Johnson v. United States, 333 U. S. 10, 13-15, 92 LE 436, 68 SC 367 (1948)." *Steagald v. United States*, 451 U. S. 204, 212, supra. "Such

unconsented-to entry without a search warrant violated the Fourth Amendment, as the Supreme Court concluded in *Steagald*." *Otwell v. State*, 201 Ga. App. 71, 73, supra. Accordingly, the trial court erred in denying defendant's motion to suppress.

*Judgment reversed. Beasley, C. J., Pope, P. J., Johnson, Smith and Ruffin, JJ., concur. Birdsong, P. J., Andrews and Blackburn, JJ., dissent.*

BLACKBURN, Judge, dissenting.

I must respectfully dissent from the majority. Because it is not disputed that the marijuana was in plain view, I believe the issue to be decided is whether the officer properly entered King's home, not whether the officer's search of King's home was proper.

On appeal of a suppression hearing we must accept the trial court's findings on questions of fact and credibility unless clearly erroneous. See *State v. Fowler*, 215 Ga. App. 524, 525 (451 SE2d 124) (1994). The trial court found that "[a]t the time of the entry into the Defendant's residence pursuant to the arrest warrant on April 30, 1994, the deputies were possessed of a warrant which listed the address of Smith at 1344 Hatchcover Circle. Furthermore, at the previous attempt to execute the warrant, Deputy Tischner observed what he perceived to be potential furtive conduct on the part of the Defendant, which possibly could have been a 'tip-off' to Smith that the Sheriffs were there with a warrant for his arrest. Moreover, on the consent to search of the premises on April 29, 1994, Deputy Tischner observed items of personal property apparently belonging to Smith contained in the room which King indicated was Smith's bedroom. Based on the foregoing objective bits of information available to the officers on April 30, 1994, the Court finds that the deputy sheriffs had probable cause to believe that 1344 Hatchcover Circle was the address of Dwayne Lee Smith. Furthermore, they were possessed with a valid arrest warrant for him. The Court specifically holds that the officers were not required to rely on potentially self-serving statements of the Defendant King when he told Deputy Tischner at the scene on April 29, 1994, and later phoned the Sheriff's Department, that Smith no longer resided there."

The trial court held that Deputy Jordan's entry into King's house was authorized under the exigent circumstances exception to the search warrant requirement. The trial court determined that Deputy Jordan was authorized to make a de minimis entry into the house to ensure his safety as King was backing into the house. These findings are supported by the record. Deputy Jordan testified that King was agitated and backed into the house. He further testified that for his own safety, he entered into the threshold of the residence.

The present case is distinguishable from *Otwell v. State*, 201 Ga.

App. 71, 73 (410 SE2d 178) (1991), relied upon by the majority, where we noted that "[t]he best that can be said is that the officers merely walked in without seeking permission." In the present case evidence of exigent circumstances did exist to justify the officer's de minimis entry into King's residence for his own protection. Thereafter, the marijuana was properly seized under the plain view doctrine. As the trial court's findings were not clearly erroneous, I would affirm its denial of King's motion to suppress.

I am authorized to state that Presiding Judge Birdsong and Judge Andrews join in this dissent.

DECIDED JULY 14, 1995.

*A. Larry King*, for appellant.
*Keith C. Martin, Solicitor, Michael P. Baird, Assistant Solicitor*, for appellee.