A01A2045. BIUS v. THE STATE.
(563 SE2d 527)

BARNES, Judge.

After the grant of her interlocutory appeal, Sherri Samantha Bius appeals the denial of her motion to suppress, challenging the searches of her vehicle and her residence. Following the execution of the warrant at her home, Bius was indicted on more than 30 counts

of criminal activity, including allegations of financial identity fraud, forgery, and theft by receiving stolen property.

She contends the trial court erred by denying her motion to suppress the evidence seized in both searches because the evidence seized during the search of her car resulted from an unlawful traffic stop and detention, and the evidence seized during the search of her home was the result of an unauthorized search warrant. The warrant was unauthorized, she argues, because the information in the affidavit supporting the search warrant was stale, the confidential informant's reliability was not established, and the warrant relied in part on evidence illegally seized from her car. Although we find that the traffic stop was not authorized and must reverse the denial of that part of Bius's motion to suppress, we find no error regarding the warrant authorizing the search of Bius's house. Therefore, we affirm that portion of the denial of Bius's motion to suppress.

1. The rules applicable to an appellate court's review of a trial court's decision on a motion to suppress were announced in *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994):

> When an appellate court reviews a trial court's order concerning a motion to suppress evidence, the appellate court should be guided by three principles with regard to the interpretation of the trial court's judgment of the facts. First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support [them]. Second, the trial court's decision with regard to the questions of fact and *credibility* must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment.

(Citations and punctuation omitted; emphasis in original.)
Further, when

> determining whether probable cause supported issuance of a search warrant, a "totality of the circumstances" test is employed. The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of [the] reviewing court is simply to ensure that the magistrate had

a substantial basis for concluding that probable cause existed.

(Citations and punctuation omitted.) *Sims v. State*, 207 Ga. App. 353, 354 (427 SE2d 842) (1993).

2. Bius first contends that the trial court erred by denying her motion to suppress evidence seized after the traffic stop in Gwinnett County because the officer stopped her only because he recognized he had stopped her previously and because her car had a "drive-out tag." Bius also contends the search was invalid because the officer exceeded the limited time necessary to investigate the reason for the stop. See *Smith v. State*, 216 Ga. App. 453, 455 (2) (454 SE2d 635) (1995). Because we find that the stop was unlawful, we need not address the second prong of Bius's attack.

The officer testified that he stopped Bius because her car was displaying a drive-out tag and he wanted to see if she had owned the car for less than 30 days. He further testified that it was his common practice to pull over vehicles that had drive-out tags without dates on them. At the time of the stop, Georgia law had not been changed to require that the expiration date be displayed on the drive-out tag. See OCGA § 40-2-8 (b) (2) (B) (i), effective July 1, 2000. The officer did not testify, however, that anything about the appearance of the drive-out tag led him to believe that Bius was violating the vehicle registration laws. Compare *Chiasson v. State*, 250 Ga. App. 63, 64 (1) (549 SE2d 503) (2001) (officer authorized to stop car to investigate whether a car with a faded or weathered drive-out tag was in compliance with vehicle registration laws).

In *Berry v. State*, 248 Ga. App. 874, 880 (3) (547 SE2d 664) (2001), this court held that "the critical issue to the validity of a traffic stop is whether the officer had 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" Thus, we considered whether stopping a vehicle with a drive-out tag because such cars might be stolen was authorized under our law and concluded that it was not. Id. at 879-881. Extending that analysis to the present circumstances, we find that stopping a car with a drive-out tag solely to ascertain whether the driver was complying with our vehicle registration laws is also not authorized. See id. at 888-890 (Pope, P. J., concurring specially). The officer in this case also "had no 'particularized and objective basis for suspecting [Bius] of criminal activity.'" Id. at 880 (3). He had a mere hunch that the driver and owner of a car with a drive-out tag might not be complying with the vehicle registration laws. Therefore, the traffic stop was not authorized, and the trial court erred by denying the motion to suppress as it concerned the items seized during the search of Bius's car. Accordingly, this part of the trial court's order must be

reversed and remanded to the trial court with direction to grant the motion to suppress on these items.

In *Berry*, both Presiding Judge Pope's special concurrence, joined by four other judges, id. at 888-890, and Judge Ruffin's special concurrence, joined by two other judges, id. at 883-888, called for overruling *Burtts v. State*, 211 Ga. App. 840 (440 SE2d 727) (1994). Although a clear majority of this court wanted *Burtts* overruled, our opinions in *Berry* did not explicitly overrule it. Therefore, we now accomplish what we implied in *Berry* and expressly overrule *Burtts* and any other cases which would authorize a traffic stop solely because a vehicle was being operated with a dealer's drive-out tag.

3. Bius attacks the affidavit supporting the search warrant for her residence on the theory that the confidential informant's reliability was not established and the information he provided was stale. We disagree. When determining whether an affidavit sufficiently establishes probable cause, we use the " 'totality of the circumstances' analysis enunciated in *Illinois v. Gates*, 462 U. S. 213 (103 SC 2317, 76 LE2d 527) (1983), and adopted by [our Supreme C]ourt in *State v. Stephens*, 252 Ga. 181 (311 SE2d 823) (1984)." *Gary v. State*, 262 Ga. 573, 577 (422 SE2d 426) (1992). To determine an informant's reliability, a magistrate should be furnished with three facts: (1) the type of information previously supplied by the informant, (2) the use to which the information was put, and (3) the elapsed time since the information was furnished. *Mitchell v. State*, 239 Ga. App. 735, 736 (1) (521 SE2d 873) (1999).

The affidavit in this case shows that two of the three types of facts, the information previously supplied by the informant and the use to which the information was put, were provided explicitly in the affidavit. The third type, the elapsed time since the information was supplied, was not provided. It is not necessary, however, that all three types of information be provided in every case so long as the magistrate has sufficient information to make an independent analysis of the informant's reliability. *Pitts v. State*, 212 Ga. App. 556, 557 (1) (442 SE2d 797) (1994). Further, the issue of staleness is incorporated in the broad overview of the totality of the circumstances test. *State v. Luck*, 252 Ga. 347 (312 SE2d 791) (1984).

The affidavit recites that the informant saw Bius steal mail from post office mailboxes, that she kept stolen mail at her home, that she had large quantities of stolen mail, credit cards, mail bags, blank check paper, and stolen identification cards at her home as recently as July 18-24, 1999, and that she had been stealing mail for about two years. Further, the informant provided to the officers unopened mail that he took from Bius's home while he was there to purchase drugs from her in a controlled buy. The person who sent this mail informed the officers that she had mailed the letter and that it never

arrived. The affidavit further related that the officer had investigated numerous complaints of identity fraud and forgery.

Therefore, we find that the information provided in the affidavit was sufficient to provide a substantial basis for concluding that probable cause existed for issuing the search warrant. *Galvan v. State*, 240 Ga. App. 608, 609 (524 SE2d 297) (1999).

4. Because we have determined that some of the information in the affidavit was obtained as the result of an illegal search, we must also determine whether the remaining information in the affidavit was sufficient to authorize issuance of the search warrant. Examining the entire affidavit (*Kelly v. State*, 184 Ga. App. 337 (1) (a) (361 SE2d 659) (1987)), we note that it merely relates that Bius was stopped by a police officer in Gwinnett County and was found to possess more than 100 U. S. Postal Service keys, numerous personal checks and credit cards in the names of approximately 26 different people, and credit cards and a Social Security card in the name of another person. The affidavit, however, does not rely upon this information as a basis for searching Bius's home. Instead, the information discussed above in Division 3 formed the basis for issuing the warrant.

> When an affidavit in support of a search warrant contains information which is in part unlawfully obtained, the validity of a warrant and search depends on whether the untainted information, considered by itself, establishes probable cause for the warrant to issue. If the lawfully obtained information amounts to probable cause and would have justified issuance of the warrant, apart from the tainted information, the evidence seized pursuant to the warrant is admissible.

(Citations and punctuation omitted.) *Rothfuss v. State*, 160 Ga. App. 863, 864 (1) (288 SE2d 579) (1982). Considered in that manner, we find that the affidavit supporting the warrant authorizing the search of Bius's home contained sufficient information, independent of that derived from the search of her car, to provide probable cause to search Bius's home. Consequently, although the trial court erred by denying the motion to suppress the evidence derived from the search of the car, this error was harmless as it concerns the search of Bius's home.

Accordingly, we affirm the trial court's decision to deny the motion to suppress the evidence seized during the search of Bius's home, and we reverse the denial of the motion to suppress the evidence seized during the search of her car and remand the case to the trial court with direction to suppress the evidence seized in that search.

*Judgment affirmed in part and reversed in part with direction. Andrews, P. J., Johnson, P. J., Ruffin, Eldridge, Miller, Ellington and Phipps, JJ., concur. Pope, P. J., concurs specially. Blackburn, C. J., Smith, P. J., and Mikell, J., concur in part and dissent in part.*

POPE, Presiding Judge, concurring specially.

I concur fully in the majority opinion but write separately to stress that ten out of twelve judges of this Court have already agreed, even in situations arising before Georgia law required dealer tags to show their expiration date, that it was a violation of the Fourth Amendment to stop a car solely because it carried a dealer tag. *Berry v. State*, 248 Ga. App. 874, 880 (3) (547 SE2d 664) (2001). The reasoning in *Berry* is sound, and it requires overruling *Burtts v. State*, 211 Ga. App. 840 (440 SE2d 727) (1994) — if that case has not already been overruled by *Berry*.

Prior to the time that OCGA § 40-2-8 was modified to require that dealer tags show their expiration date, law enforcement officers argued that they had grounds to stop cars with dealer tags because (1) they had knowledge that some of those cars might be stolen, and (2) they wanted to check to see whether the undated tag had expired. See, e.g., *Watson v. State*, 190 Ga. App. 696 (379 SE2d 817) (1989) (stolen); *Burtts v. State*, 211 Ga. App. at 840 (check for expiration).

In *Berry* a ten-judge majority expressly held that the first argument could not withstand constitutional scrutiny and therefore it overruled *Watson*. Eight of those same judges also held that for the identical reason, the second argument failed the same test, and that therefore *Burtts* should also be overruled. Indeed, *Burtts* was based, in part, on *Watson*.

In *Watson* this Court held that, based on an officer's subjective knowledge that some cars with dealer tags might be stolen, the simple fact that someone was driving a car with a dealer tag was an "objective manifestation that the persons stopped may be engaged in criminal activity." (Citations and punctuation omitted.) 190 Ga. App. at 696-697. In *Berry* ten judges concurred in overruling that aspect of *Watson*. 248 Ga. App. at 880 (3). As explained by Judge Ruffin in his special concurrence, stopping apparently compliant drivers because of the danger presented that some of those drivers are engaged in criminal activity that is not observable at the time of the stop does not survive the United States Supreme Court's balancing test in *Delaware v. Prouse*, 440 U. S. 648 (99 SC 1391, 59 LE2d 660) (1979). That test requires balancing the intrusion of a law enforcement practice on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests. Id. at 653-654. That the decision in *Berry* is correct is made plain by Judge Ruffin in his footnote 17 — although it is documented that some cars are stolen more

often than others, no one would argue that in an effort to prevent car theft, the police should be allowed to randomly stop anyone driving one of the most frequently stolen cars.

*Burtts* contains the identical flaw, and, moreover, it is based in part on *Watson*. In *Burtts*, the officer pulled the car over just to check to see if the dealer tag had expired. That case held that because an undated dealer tag might have expired, there was articulable suspicion of illegal operation. 211 Ga. App. 840. In *Delaware v. Prouse*, the Supreme Court declared unconstitutional random stops of individual cars for the purposes of checking the driver's license and the car's registration to see if they were valid, holding:

> except in those situations in which there is at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law, stopping an automobile and detaining the driver in order to check his driver's license and the registration of the automobile are unreasonable under the Fourth Amendment.

440 U. S. at 663 (VII). Automobile licenses and registrations are issued periodically and promote legitimate state interests. Id. at 658. But, even though all licenses and registrations expire periodically, that is not a sufficient basis to randomly stop drivers to make sure that their documents are up to date.

The same reasoning applies here, and in *Burtts*, to invalidate stopping drivers solely because they have undated dealer tags in an effort to enforce registration laws. Unless something else about an undated dealer tag (such as that it looks old, torn, or faded) suggests that it may have expired, a dealer tag, standing alone, does not provide an articulable suspicion that the tag has expired. Thus, *Burtts* should be overruled, specifically *for* cases arising prior to July 1, 2000, the effective date of the changes made to OCGA § 40-2-8 that require expiration dates on dealer tags.

MIKELL, Judge, concurring in part and dissenting in part.

I concur fully in Divisions 1, 3 and 4. I respectfully dissent from Division 2, because I believe that the analysis of *Burtts v. State*, 211 Ga. App. 840 (440 SE2d 727) (1994), is valid for cases arising prior to July 1, 2000, the effective date of the changes made by OCGA § 40-2-8 (b) (2) (B) (i). I agree with the majority to the extent that *Burtts* should not be followed for cases arising after July 1, 2000.

I am authorized to state that Chief Judge Blackburn and Presiding Judge Smith join in this dissent.

DECIDED MARCH 29, 2002.

*Peevy & Lancaster, Donn M. Peevy, Lucas O. Harsh*, for appellant.

*Thurbert E. Baker, Attorney General, Michael E. Hobbs, Deputy Attorney General, David S. McLaughlin, Assistant Attorney General,* for appellee.