A06A1984. THE STATE v. PANDO et al.

(643 SE2d 342)

ELLINGTON, Judge.

The State charged Luis Pando and Olanrewaju Ojemuyiwa with possession with intent to distribute marijuana, OCGA § 16-13-30, and possession of diazepam, OCGA §§ 16-13-28 and 16-13-30. The defendants filed a motion to suppress the evidence, which the trial court granted. The State appeals, contending the trial court erred in finding that the search of Pando's home by police officers violated their Fourth Amendment rights and, even if it did, the court should have admitted the evidence under the inevitable discovery doctrine. Finding no error, we affirm.

> A trial judge's findings of fact on a motion to suppress should not be disturbed if there is any evidence to support them; determinations of fact and credibility must be accepted unless clearly erroneous; and the evidence must be construed most favorably to the upholding of the trial court's findings and judgment.

(Citations omitted.) *Kirsche v. State*, 271 Ga. App. 729 (611 SE2d 64) (2005). Viewed in this light, the evidence presented during the motion hearing established the following relevant facts. On May 13, 2005, two Cobb County police officers went to Pando's home in Marietta after receiving a tip that Pando was the source of hydroponically-grown marijuana. The officers intended to do a "knock and talk" and, hopefully, a consensual search of Pando's home. The officers knocked on Pando's door, and Pando answered it. One of the officers, Agent Don Massey, testified that he was "overwhelmed" with the smell of

"fresh marijuana" when Pando opened the door. Pando stepped out onto the porch and partially closed the door behind him. Agent Massey advised Pando about what he had smelled and told Pando, "we need to go inside and talk about ... this situation." Pando told the officers that he did not want them to go in the house and that he wanted to talk outside. Pando's girlfriend, Ojemuyiwa, then opened the door, and Agent Massey smelled the marijuana again. As Ojemuyiwa stood in the doorway, Agent Massey again stated that he could smell marijuana, and Ojemuyiwa said, "Oh, I'm sorry."[1] Agent Massey then said, "We need to go inside," and he escorted the defendants into Pando's living room. Agent Massey testified that, at that time, he knew he needed a search warrant to search the house.

Once the officers were in the living room, they saw a small amount of marijuana on a coffee table. The second officer asked the defendants if there was anyone else in the house. Agent Massey testified that there was "a little bit of hesitation" before the defendants responded that no one else was in the house. The officers then decided to do a "security search" of the house to look for other people and weapons, so the second officer drew his weapon and walked through all of the rooms of the house. During this search, the officer entered a room in which marijuana was growing. The officer reported his findings to Agent Massey, who placed the defendants under arrest. Agent Massey then radioed for assistance so he could leave and obtain a search warrant.

In Agent Massey's application for the search warrant, he stated that there was a "strong smell of marijuana" when Pando opened the door, that he escorted the defendants into the house, and that "there was marijuana on the table in plain view." In addition, Agent Massey admitted that he gave the magistrate court oral testimony about "the circumstances that occurred" at Pando's house and "probably expounded on what we saw" inside the house. Once the magistrate issued the warrant, Agent Massey returned to Pando's home and conducted the search.

After hearing the evidence, the trial court found that the State failed to present "sufficient evidence of either a valid consent or exigent circumstances necessitating a warrantless entry into the premises. The officers also did not testify to any articulable facts that would justify a protective sweep of the premises. Therefore, the initial entry into Defendants' home was unlawful." The court then noted that even though the initial entry was unlawful, the evidence would

---

[1] There was no evidence that either defendant smelled of marijuana or marijuana smoke, that either defendant appeared to be under the influence of marijuana, or that there was any marijuana smoke emanating from the doorway.

not have been suppressed if the State could have proved by a preponderance of the evidence that the evidence discovered after the illegal entry "would have been ultimately or inevitably discovered by lawful means." The court found, however, that the State failed to meet this burden, because Agent Massey "included information in the search warrant application that was garnered during the initial warrantless entry into the home, specifically that marijuana was seen inside the home. The use of that information rendered the search warrant invalid and tainted the resulting search." Based upon these findings, the court granted the defendants' motion to suppress.

1. On appeal, the State argues that the trial court erred in finding that the officers' entry into Pando's home and the subsequent "protective sweep" violated the Fourth Amendment's prohibition against warrantless searches. We disagree.

(a) It is axiomatic that, under the Fourth Amendment, police officers are prohibited from entering a person's home or its curtilage without a warrant absent consent or a showing of exigent circumstances. *Kirsche v. State*, 271 Ga. App. at 731. In this case, it is undisputed that Agent Massey knew that he needed a search warrant before searching Pando's home, that the officers had not obtained a warrant prior to entering, that the officers did not ask for Pando's consent for a search, that Pando never consented to a search, and that Pando actually told the officers he did not want them to enter his home. Further, there is no evidence that the officers ever asked Ojemuyiwa to step outside the house or that either defendant attempted to retreat back into the house after being confronted by the officers. In addition, it is undisputed that the officers were not in "hot pursuit" of the defendants prior to entering Pando's home. And the fact that there was an odor of fresh marijuana emanating from the home did not give rise to exigent circumstances that would justify a warrantless entry. *Davis v. State*, 262 Ga. 578, 582 (3) (422 SE2d 546) (1992). Accordingly, the State was required to show some other authority to justify the officers' warrantless entry and protective sweep.

(b) The State argues that the officers were justified in entering Pando's home to conduct a protective sweep because the sweep was incident to an arrest of the defendants and because the officers needed to take steps to protect themselves from any potentially dangerous person who might be inside Pando's home. For the following reasons, these arguments lack merit.

A "protective sweep" is a limited search of the premises primarily to ensure officer safety by detecting the presence of other occupants. . . . Officers may conduct a protective sweep in connection with an in-home arrest when they

possess articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene.

(Citation and punctuation omitted.) *State v. Charles*, 264 Ga. App. 874, 875 (1) (592 SE2d 518) (2003). See also *State v. Mixon*, 251 Ga. App. 168, 170 (554 SE2d 196) (2001) (accord).

First, Agent Massey specifically testified that his warrantless entry into the home was *not* incident to an arrest of either defendant. Instead, the undisputed evidence shows that the officers' entry into and search of the residence preceded the defendants' arrest and, in fact, provided the basis for that arrest. Moreover, the State never argued below that the entry into Pando's home was incident to an arrest. Its claim to the contrary on appeal must fail.

Second, as the trial court found, the State failed to show that, during the officers' brief encounter with the defendants on the porch prior to ushering them inside, the officers observed any articulable facts that would support a suspicion that another person was inside Pando's home who posed a threat to them. While Pando stood on the porch and Ojemuyiwa stood in the doorway, the officers did not ask them if anyone else was inside the house, and there was no evidence of other voices or unexplained noises coming from inside the house. In addition, there was no evidence of any evasive, threatening, or suspicious behavior by the defendants that would have indicated others were in the house or that the defendants themselves posed a threat to the officers. See *Davis v. State*, 262 Ga. at 582-583 (3) (warrantless entry was not justified when there was no evidence that someone was inside the house or that officers and others standing outside the house were in danger); *Kirsche v. State*, 271 Ga. App. at 732-733 (officers were not authorized to make a warrantless entry or take self-protective measures absent evidence that the defendant was armed or that others inside posed a danger to the officers); *State v. Charles*, 264 Ga. App. at 875-876 (1) (a protective sweep of a motel room was not authorized when the defendants were outside the room, were not under arrest, and did not appear threatening in any way, and there was no indication that anyone else was in the room); *State v. Mixon*, 251 Ga. App. at 170-171 (a protective sweep was not authorized when the defendants had not been placed under arrest at the time of the sweep and the officer admitted that he did not know whether anyone was in the house prior to conducting the sweep); *King v. State*, 217 Ga. App. 889, 891 (459 SE2d 605) (1995) (after an officer went to a house to arrest a suspect, the defendant answered the door, said the suspect did not live there, and walked back inside; although

the defendant was agitated when he answered the door, the officer was not justified in entering the house behind him without the defendant's consent when there was no evidence that he posed a threat to the officer); cf. *Inglett v. State*, 239 Ga. App. 524, 525 (1) (521 SE2d 241) (1999) (warrantless entry and protective sweep were authorized when, immediately prior to the defendant's arrest outside the house, the defendant indicated others were inside the house and officers saw another person inside).

Although Agent Massey testified that they entered the home and did the protective sweep because he believed "where there's drugs there's usually other people, and there's weapon[s] involved," there was simply no evidence of other people or weapons in this case. Agent Massey's generic concern, while not per se unreasonable, falls short of establishing specific, articulable facts that indicated someone else was inside Pando's house and posed a threat to the officers as they stood outside the house. See *State v. Charles*, 264 Ga. App. at 875-876 (1) (protective sweep of motel room was unjustified when there was no evidence that there was anyone inside the room). Moreover, the State has offered no explanation to show why, if the officers believed that they had enough evidence to secure a search warrant before entering the house and that there may have been other people waiting inside with weapons, they did not keep the defendants outside and secure the house from the outside while they obtained the search warrant, instead of choosing to enter the home and risk encountering a volatile and dangerous situation. See *Illinois v. McArthur*, 531 U. S. 326, 331-332 (II) (A) (121 SC 946, 148 LE2d 838) (2001) (given that officers had probable cause to believe that the defendant had drugs in his home, it was reasonable to detain the defendant outside his home for two hours while the officers secured a search warrant); see generally *King v. State*, 217 Ga. App. at 891 (an unnecessary, warrantless entry is not just illegal, but also unwise).

Accordingly, the evidence presented supports the trial court's finding that the warrantless entry into and protective sweep of Pando's home was not authorized under the circumstances and, therefore, violated the defendants' constitutional rights. The court's grant of the defendants' motion to suppress on that basis was not error. *State v. Charles*, 264 Ga. App. at 875-876 (1).

(c) The State also contends that the warrantless entry and protective sweep were justified due to an exigent circumstance, specifically, the need "to prevent the imminent destruction of evidence" by someone inside Pando's home. This argument lacks merit.

The transcript of the motion hearing shows that the State failed to make or present any evidence in support of this argument in the court below. In addition, Agent Massey never testified that he entered the house in order to prevent the destruction of evidence. Instead, the

State relied solely on its argument that the officers entered the home and did the protective sweep out of concern for their safety.

Moreover, as shown above, the State failed to demonstrate that, before the officers entered Pando's home, the officers had a reasonable belief that someone was hiding inside the house. "Therefore, at the time [the officers] entered the house, there was no threat, actual or perceived, of the drugs being destroyed if a search was not commenced right away, and the possibility that the drugs might be destroyed does not excuse the [officers'] warrantless entry." (Footnote omitted.) *Davis v. State*, 262 Ga. at 583 (3). Although the State now argues that, without the warrantless entry, Ojemuyiwa would have been "free to retreat into the interior of the house to retrieve a weapon or destroy the evidence," there was no evidence that the officers ever asked her to step outside the house or that either of the defendants made any attempt to retreat into the house after seeing the officers.

Accordingly, this argument presents no basis for reversing the court's order.

2. In the alternative, the State argues that, even if the warrantless entry was unlawful, the trial court should have admitted the contraband discovered during the subsequent search under the inevitable discovery doctrine.

> [U]nder the inevitable discovery doctrine, if the State can prove by a preponderance of the evidence that evidence derived from police error or illegality would have been ultimately or inevitably discovered by lawful means, then the evidence is not suppressed as fruit of the poisonous tree. There must be a reasonable probability that the evidence in question would have been discovered by lawful means, and the prosecution must demonstrate that the lawful means which made discovery inevitable were possessed by the police and were being actively pursued prior to the occurrence of the illegal conduct.

(Citations and punctuation omitted.) *State v. Rocco*, 255 Ga. App. 565, 566 (566 SE2d 365) (2002). The inevitable discovery doctrine is closely related to the independent source doctrine, which provides that evidence discovered during an illegal warrantless entry and search may be admissible if a search warrant was subsequently obtained using information that was wholly independent of the illegally obtained evidence and that was known to the officers prior to the illegal entry. See *Mack v. State*, 189 Ga. App. 261, 263 (2) (375 SE2d 458) (1988) (affirming the denial of a motion to suppress

because officers obtained a search warrant based solely on information they had obtained prior to their illegal entry and which was wholly independent of evidence discovered during that entry).

The State argues that the officers had obtained sufficient evidence of illegal activity prior to their warrantless entry to establish probable cause for a search warrant and, therefore, the officers would have inevitably discovered the contraband in Pando's home. According to the State, this evidence included the tip they had received that Pando was growing marijuana, the odor of marijuana emanating from Pando's door, and Ojemuyiwa's spontaneous response when the officers told her they could smell marijuana inside. Although the State argues that the officers could have secured a search warrant based solely upon this information, the fact is they did not. Not only did Agent Massey present illegally obtained evidence to the magistrate, there is no evidence to show that he informed the magistrate of either the tip or of Ojemuyiwa's statement.

(a) The record shows that the search warrant affidavit did not mention either the tip or Ojemuyiwa's statement. Instead, the affidavit simply stated that the officers "knocked on the door of [Pando's residence]. Mr. Pando answered the door and when it opened we noticed the strong smell of marijuana. We escorted [the defendants] into the residence where there was marijuana on the table in plain view." The evidence of the marijuana on the table was the result of an illegal entry by the officers[2] and, therefore, could not provide support for the search warrant.

> When an affidavit in support of a search warrant contains information which is in part unlawfully obtained, the validity of a warrant and search depends on whether the untainted information, considered by itself, establishes probable cause for the warrant to issue. If the lawfully obtained information amounts to probable cause and would have justified issuance of the warrant, apart from the tainted information, the evidence seized pursuant to the warrant is admissible.

(Citation and punctuation omitted.) *Bius v. State*, 254 Ga. App. 634, 638 (4) (563 SE2d 527) (2002).

In this case, the only independent, lawfully obtained information in the affidavit that even suggested that there might have been illegal activity inside Pando's house was the "strong smell of marijuana" the officers noticed when the defendants opened the door. Although the

---

[2] See Division 1, supra.

odor of marijuana may be considered as part of the totality of circumstances in determining whether there is sufficient probable cause to support a search warrant, *State v. Charles*, 264 Ga. App. at 876 (2), the affidavit in this case contains no other untainted evidence that would support a finding of probable cause. The State has failed to cite to any case in its appellate briefs that ruled the odor of fresh marijuana, standing alone, was sufficient to establish the probable cause needed to secure a search warrant for a residence. Moreover, this Court has previously considered the totality of circumstances in cases similar to this one and has concluded that, even when the odor of marijuana smoke was coupled with other evidence, the evidence was insufficient to establish probable cause for a search warrant for a residence. See, e.g., id. at 877 (2) (affirming the trial court's finding that the odor of marijuana smoke emanating from motel room and the defendant's admission that he had smoked marijuana earlier in the day was insufficient to establish probable cause for the issuance of a search warrant);[3] see also *Patman v. State*, 244 Ga. App. 833, 835 (537 SE2d 118) (2000) ("the fact that the smell of burning marijuana establishes probable cause for the search of a car does not mean that such odor, standing alone, will justify a search in other contexts") (footnote omitted).

Accordingly, after subtracting from the affidavit the reference to the marijuana on the table, we find Agent Massey's lone statement that the officers smelled marijuana when the defendants opened the door was insufficient to establish probable cause for a search warrant for Pando's residence. *State v. Charles*, 264 Ga. App. at 877 (2).

(b) Further, there is nothing in the record to show that, during his oral statements to the magistrate, Agent Massey ever told the magistrate about the informant's tip or Ojemuyiwa's spontaneous remark. Even if the officer told the magistrate about the tip, there is no evidence in the record to establish the informant's reliability, which is required in order for the magistrate to consider the tip in issuing the warrant. "To determine an informant's reliability, a magistrate should be furnished with three facts: (1) the type of information

---

[3] But see *Taylor v. State*, 254 Ga. App. 150, 150-152 (1) (561 SE2d 833) (2002) (officers received complaints about people smoking marijuana in a building, they smelled marijuana smoke coming from an apartment and on the clothes of people leaving the apartment, and, after one person went back into the apartment after speaking with the police, the officers entered the apartment and saw a pistol and a bag of marijuana; this evidence was sufficient to support the issuance of a search warrant); *State v. Fossett*, 253 Ga. App. 791, 793 (1) (560 SE2d 351) (2002) (the officer's affidavit stated that he entered the defendant's home during an emergency call, the defendant's wife was unconscious on the floor, and he smelled burning marijuana; it also stated that the officer knew the defendant and had discovered drugs and drug paraphernalia in the defendant's house four months earlier; this was sufficient evidence to support a search warrant).

previously supplied by the informant, (2) the use to which the information was put, and (3) the elapsed time since the information was furnished." (Citation omitted.) *Bius v. State*, 254 Ga. App. at 637 (3). Without this information, there was nothing to establish the informant's reliability and, therefore, the tip should not have been considered by the magistrate when determining if there was probable cause for a search warrant. Therefore, the State has failed to show that, even if Agent Massey presented information about the tip to the magistrate in support of the warrant application, this evidence provided any additional support for a search warrant for Pando's house.

(c) Moreover, it is undisputed that Agent Massey told the magistrate about the marijuana on the table in addition to the marijuana odor, and he admitted at the motion hearing that he "probably expounded on what we saw" inside the house, although he did not elaborate on the content of his statements. Agent Massey and the State have consistently asserted that the officers' entry into and sweep of the house were necessary and proper under the circumstances. Given this stance, it appears likely that Agent Massey's statements to the magistrate also included information about the marijuana found inside one of the bedrooms. As we concluded in Division 1, supra, evidence about the marijuana inside the house was illegally obtained and should not have been used to secure the warrant. The State has failed to make any showing that would support a finding that the magistrate did not consider this tainted evidence when it issued the search warrant.

Consequently, we find the State has failed to carry its burden of proving by a preponderance of evidence that the contraband inevitably would have been discovered through lawful means, i.e., that a search warrant would have been issued based *solely* upon the independent evidence obtained before the officers entered Pando's house. *Davis v. State*, 262 Ga. at 583-584 (4) (reversing the denial of a motion to suppress after finding the State had failed to show that the magistrate had sufficient facts to make an independent determination as to whether probable cause existed for the issuance of a search warrant). Accordingly, the trial court properly refused to admit evidence of the contraband under the inevitable discovery doctrine.

*Judgment affirmed. Johnson, P. J., and Miller, J., concur.*

DECIDED MARCH 8, 2007.

Patrick H. Head, District Attorney, Amy H. McChesney, Samuel W. Lengen, Assistant District Attorneys, for appellant.

Dennis C. O'Brien, David J. Koontz, for appellees.