**FOURTH DIVISION**
**DILLARD, P. J.,**
**RICKMAN and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**September 19, 2023**

# In the Court of Appeals of Georgia

A23A1026. THOMPSON v. THE STATE.

RICKMAN, Judge.

In this interlocutory appeal, we consider whether the trial court erred by denying William Thompson's motion to suppress evidence obtained when law enforcement officers entered and searched his apartment. Because the officers' initial entry into Thompson's apartment was unlawful, the evidence stemming from their search was unlawfully obtained and should have been suppressed. Accordingly, we reverse the trial court's denial of his motion to suppress.

The controlling facts of this case are undisputed and discernible from videotape evidence obtained by the arresting officer's body camera. Consequently, our review is de novo. See *Lyons v. State*, 244 Ga. App. 658, 658-659 (535 SE2d 841) (2000); see also *Benton v. State*, 302 Ga. 570, 572 (2) (807 SE2d 450) (2017) (facts

discernible from a videotape allow de novo review); see also *Clay v. State*, 290 Ga. 822, 826 (1) (A) (2) n.1 (725 SE2d 260) (2012) ("This Court owes no deference to a trial court's factual findings gleaned from a review of a videotape that are not the subject of testimony requiring the trial court's weighing of credibility or resolving of conflicts in the evidence."). The State bears the burden of proving that a search was lawful. See *State v. Hammond*, 313 Ga. App. 882, 883-884 (723 SE2d 89) (2012).

The undisputed evidence shows that this case arose when the manager of an apartment complex called law enforcement officers to report that he had observed "a lot of traffic" coming into and out of Thompson's apartment. The arresting officer, along with three or four additional members of the Statesboro Police Department Impact Team, went to the apartment and knocked on the door.

Thompson, who was a college student, answered the door, and the officer smelled the scent of burnt marijuana coming from within the apartment. The officer asked Thompson for permission to enter and, after requesting and being denied an opportunity to call his mother, Thompson refused to allow the officer to enter the apartment. The officer then explained to Thompson that he had received a drug complaint and remarked that he could smell marijuana, and Thompson admitted to having marijuana in the apartment and offered to relinquish it to the officer.

The officer informed Thompson that he could either consent to allow them to enter and search the apartment, or the officer would get a search warrant to do so. Thompson did not give consent. When Thompson stated that he did not know whether his roommates were home, the officer directed Thompson to step outside, then announced himself at the door and ordered anyone inside the apartment to come out. One of Thompson's roommates appeared from inside and the officer directed him to step outside as well. The roommate informed the officers that they had a third roommate who was out of town, and stated that no one else was inside the apartment. At all times, both men complied with the officer's commands.

The arresting officer then entered the apartment to conduct a "security sweep." After confirming that no one else was in the apartment,[1] he remained inside and directed Thompson and his roommate to reenter. The additional officers followed them into the apartment. The arresting officer again asked Thompson if he would consent to a search of his apartment, and again Thompson equivocated and requested

[1] In its order, the trial court erroneously stated that the arresting officer located Thompson's roommate during the "security sweep" and asked him to step outside as a result. This factual finding is contradicted by both the arresting officer's testimony and the videotape evidence, both of which clearly establish that the roommate presented himself and exited the apartment upon the officer's verbal command from the doorway before the sweep was conducted.

to call his mother before he relented and finally consented to the search as the officers stood around him inside of the apartment.

The arresting officer found and seized what he estimated to be five or six grams of marijuana, baggies, and a digital scale in Thompson's bedroom. He also located two locked safes in Thompson's closet, and loose marijuana escaped from the bottom of one of the safes when it was moved. The officer asked Thompson if he could access the safes, but Thompson stated that the keys had been lost. After the keys were located by an officer searching a bathroom drawer, Thompson directed the arresting officer to obtain a search warrant before opening the safes.

Thompson's roommate consented to a search of his room and, although no items of evidentiary value were found, a thick, smoky haze of burnt marijuana lingered in the room. The roommate later admitted that he had, on occasion, purchased marijuana from Thompson.

Thompson was arrested and transported to the jail. After his arrest, the arresting officer applied for and obtained a search warrant for the safes. The search of the safes resulted in the seizure of an additional 4.6 ounces of marijuana and a Glock 43 9mm pistol.

Thompson was charged with possession of marijuana with intent to distribute, possession of a firearm during the commission of a felony, and possession of drug-related objects. He filed a motion to suppress, arguing that the officers violated his Fourth Amendment rights by entering his apartment without a search warrant, valid consent, or exigent circumstances; that any consent given was the product of illegal entry and coercion; that the search warrant was based upon information obtained through the illegal entry; and that the statements made must be suppressed because they were fruits of the illegal entry and detention.

The trial court denied the motion after concluding that Thompson freely and voluntarily consented to the search of his apartment, but it failed to first address whether the officers were lawfully inside the apartment when they obtained consent and conducted the search. The trial court certified its order for immediate review, this Court granted Thompson's application for interlocutory review, and this appeal follows.

The Fourth Amendment to the United States Constitution protects against "unreasonable searches and seizures." U.S. Const. Amend. IV. "Generally, a law enforcement officer's entry into a home without a search warrant and without consent or exigent circumstances constitutes an unjustified, forcible intrusion that violates the

5

Fourth Amendment." *Leon-Velazquez v. State*, 269 Ga. App. 760, 761 (1) (605 SE2d 400) (2004); see *Little v. State*, 353 Ga. App. 549, 551-552 (1) (839 SE2d 15) (2020) ("Physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.") (citations and punctuation omitted.). Thus, even if there is probable cause to justify a warrant, "absent exigent circumstances or proper consent, warrantless searches and seizures within a home by officers in the pursuit of their traditional law enforcement duties are presumptively unreasonable." (Citation and punctuation omitted). Id.; see also *Williams v. State*, 296 Ga. 817, 819 (771 SE2d 373) (2015) (noting that a warrantless search is per se unreasonable, "subject only to a few specifically established and well-delineated exceptions"). "Such exigent circumstances include where an officer is in hot pursuit of a fleeing felon, where an officer reasonably fears the imminent destruction of evidence if entry into the residence is not immediately effected, and where an officer reasonably perceives that a suspect within the dwelling poses a risk of danger to the police or others."[2] (Citation

---

[2] In addition to the exigent circumstances set forth above, officers operating "to preserve public order, to maintain the peace, and to protect lives, persons, property, health and morals," as opposed to those in pursuit of traditional law enforcement duties, may also conduct a warrantless entry "in response to what they reasonably perceive as an emergency involving a threat to life or property." See *Love v. State*, 290 Ga. App. 486, 488 (659 SE2d 835) (2008).

6

and punctuation omitted.) *State v. Wood*, 367 Ga. App. 10, 13 (2) (884 SE2d 596) (2023).

Here, it is undisputed that when Thompson answered the door, the arresting officer smelled the odor of burnt marijuana and that Thompson, who was compliant throughout, admitted that marijuana was inside the apartment. That alone gave the officer probable cause to seek a search warrant. See generally *State v. Edwards*, 332 Ga. App. 342, 344-345 (772 SE2d 430) (2015) (recognizing that if "[an] officer who detect[s] the odor of marijuana emanating from a specified location is qualified to recognize the odor, the presence of such an odor may be the sole basis for the issuance of a search warrant").

It did not, however, dispense with the need for Thompson's consent or the existence of exigent circumstances in order to justify the warrantless entry into his apartment. See *Davis v. State*, 262 Ga. 578, 582 (3) (422 SE2d 546) (1992) ("[T]he presence of contraband without more does not give rise to exigent circumstances.") (citation and punctuation omitted.); see also *Leon-Valezquez*, 269 Ga. App. at 762 ("Without more, even probable cause to believe that a crime has been committed or is being committed does not authorize a warrantless search of one's dwelling.")

(citation and punctuation omitted). And it is undisputed that Thompson did not give consent for the officers' initial entry.

The pertinent question, therefore, is whether there existed exigent circumstances sufficient to justify the officers' entry into the apartment after Thompson and his roommate had been removed from within. The undisputed testimonial and videotape evidence establish that there did not.

The arresting officer testified during the motion to suppress hearing that at the time he conducted the "security sweep," he did not subjectively believe there to be exigent circumstances; he was not in "hot pursuit" of a wanted felon, he did not see any indication that contraband was being disposed of inside, and he did not fear for the safety of his officers. An objective viewing of the record evidence supports this conclusion.

Instead, the arresting officer testified that he conducted a "security sweep" simply to ensure no one else was inside the apartment. Traditionally,

> [a] 'protective [or security] sweep' is a limited search of the premises primarily to ensure officer safety by detecting the presence of other occupants. Officers may conduct a protective sweep in connection with an in-home arrest when they possess articulable facts which, taken together with the rational inferences from those facts, would warrant a

8

reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene.

(Citation and punctuation omitted.) *State v. Pando*, 284 Ga. App. 70, 72-73 (1) (b) (643 SE2d 342) (2007) (overruled in part on other grounds by *State v. Kazmierczak*, 331 Ga. App. 817 (771 SE2d 473) (2015)). Although a protective (or security) sweep is generally performed incident to an arrest, the fact that it is not does not automatically render it invalid under the Fourth Amendment. See *Nelson v. State*, 271 Ga. App. 658, 661 (1) (a) (610 SE2d 627) (2005); see also *State v. Charles*, 264 Ga. App. 874, 875-876 (1) (592 SE2d 518) (2003).

The arresting offer in this case did not testify and there was no record evidence from which to form a reasonable belief based on articulable facts that Thompson's apartment "harbor[ed] an individual posing a danger" to those on the scene. *Pando*, 284 Ga. App. at 73 (1) (b). It follows that the officers' entry into the apartment was unlawful. See *Edwards v. State*, 357 Ga. App. 396, 400-402 (2) (a), (b) (850 SE2d 837) (2020) (holding that the officers' entry into appellant's home to conduct a "protective sweep" was unlawful, despite the fact that they smelled marijuana and believed that she was harboring a wanted felon inside, because there was no evidence "that contraband was in immediate danger of destruction" and "[a] mere inchoate and

9

unparticularized suspicion or hunch that the home may harbor an individual posing a danger to the officers is insufficient to support a warrantless sweep") (citation and punctuation omitted); *Pando*, 284 Ga. App. at 74 (1) (a), (b) (affirming finding that entry into appellee's home was unlawful because, although the officer conducted the "protective sweep" believing that "where there's drugs there's usually other people, and there's weapon[s] involved," there "was simply no evidence of other people or weapons" and "[the officer's] generic concern, while not per se unreasonable, falls short of establishing specific, articulable facts that indicated someone else was inside [appellee's] house and posed a threat to the officers as they stood outside the house"); see also *State v. Gray*, 285 Ga. App. 124, 127-128 (2) (645 SE2d 598) (2007); *State v. Charles*, 264 Ga. App. 874, 875-876 (1) (592 SE2d 518) (2003); *State v. Mixon*, 251 Ga. App. 168, 170-171 (554 SE2d 196) (2001).

Moreover, although the trial court determined that Thompson freely and voluntarily consented to the search,[3] it failed to consider that he gave consent only after the officers' unlawful entry. In that circumstance,

> we examine the totality of the circumstances to determine whether the consent was voluntary because it was obtained by means sufficiently attenuated or distinguishable from the illegality to be purged of any taint, or whether the consent was invalid because it was the product of and tainted by the illegality.

(Citation and punctuation omitted.) *Watson v. State*, 302 Ga. App. 619, 623 (1) (691 SE2d 378) (2010); see *Pledger v. State*, 257 Ga. App. 794, 797 (572 SE2d 348) (2002) ("This requirement focuses on causation: "Whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.") (citation and punctuation omitted). "In making this determination, proof of voluntary consent alone is not sufficient. The

---

[3] "In order to justify a warrantless search on the grounds of consent, the State has the burden of proving that the consent was freely and voluntarily given under the totality of the circumstances. Mere acquiescence in an officer's authority will not demonstrate the accused's voluntary consensual compliance with the request made of him." *State v. Turner*, 304 Ga. 356, 359 (1) (818 SE2d 589) (2018) (citations and punctuation omitted).

11

relevant factors to be considered include the temporal proximity to the illegal entry, the intervening circumstances and the purpose and the flagrancy of the official misconduct." (Citation and punctuation omitted.) *Watson*, 302 Ga. App. at 623 (1).

Although ordinarily we would remand the case to the trial court to allow it to consider this issue in the first instance, we need not do so here in light of the undisputed facts discernible from the videotape evidence. See *Benton v. State*, 302 Ga. at 572 (2). The body camera footage shows that Thompson declined to give consent to allow the officers to enter and search his apartment at least twice before the arresting officer conducted the "security sweep." It was only after the arresting officer remained and directed Thompson and the remaining officers back inside that Thompson relented and very shortly thereafter consented to the search. There is simply no evidence from which to conclude that the consent was attenuated or distinguishable from the unlawful entry; to the contrary, the evidence shows the consent was given in response to the unlawful entry, and there were no intervening circumstances that attenuated that causal chain. As such, any physical evidence seized and incriminating statements made as a result of the initial search were "fruit of the poisonous tree" and should have been suppressed by the trial court. See generally *Watson v. State*, 302 Ga. App. 619, 623-624 (1) (691 SE2d 378) (2010) (reversing

12

denial of motion to suppress because after ignoring the officers' repeated knocking and requests for appellant to answer, appellant only came to the door and gave consent to search after officers unlawfully entered his home; consent determined to be "merely a submission to an apparent legitimate display of legal authority to which all are required to submit"); see also *Little*, 353 Ga. App. at 554-555 (2). Compare *Watson*, 302 Ga. App. at 625-626 (1) (suppressing evidence obtained immediately after officers unlawfully entered appellant's home and discovered runaway minor, but holding statement made by the runaway after she had been released but later returned to the scene were admissible because "it was further separated in time from the illegal search and came only after the intervening circumstance of her release from police custody).

The State nevertheless argues that the evidence would have inevitably been discovered based on testimony by the arresting officer that he planned to obtain a search warrant had Thompson not consented to the search and, in fact, did so after Thompson withdrew his consent to search the safes.

The inevitable discovery doctrine provides that evidence obtained after an unlawful search need not be suppressed as fruit of the poisonous tree "if the State can prove by a preponderance of the evidence that evidence derived from police error or

illegality would have been ultimately or inevitably discovered by lawful means." (Citation and punctuation omitted.) *Edwards*, 357 Ga. App. at 399 (1); see *Mobley v. State*, 307 Ga. 59, 76 (4) (b) (834 SE2d 785) (2019). In order for the doctrine to apply, "there must be a reasonable probability that the evidence in question would have been discovered by lawful means, and the prosecution must demonstrate that the lawful means which made discovery inevitable were possessed by the police and were being actively pursued prior to the occurrence of the illegal conduct." (Citation and punctuation omitted; emphasis omitted.) *Edwards*, 357 Ga. App. at 399 (1). "This 'active pursuit rule' is a judicial effort to prevent application of the inevitable discovery doctrine from emasculating the search warrant requirement of the Fourth Amendment." (Citation and punctuation omitted.) Id.

Here, it is undisputed that the arresting officer did not apply for a search warrant or even begin the application process until Thompson's apartment had been entered and searched and Thompson himself had been arrested and jailed. It follows that the inevitable discovery doctrine does not apply. See *State v. Wood*, 367 Ga. App. 10, 14 (3) (884 SE2d 596) (2023) ("Absent proof that the officers were actively pursuing a warrant [when they entered and searched appellee's hotel room], the mere fact that drug task force agents actually obtained a warrant later that day is not

14

enough to bring this case within the inevitable discovery exception."); *Edwards,* 357 Ga. App. at 400 (1) (affirming suppression of evidence because even assuming officers had probable cause to obtain a search warrant based on the odor of marijuana, "there [was] no evidence that [they] had applied for a warrant or even were preparing an application for a warrant prior to entering and searching [appellant's] home").

For these combined reasons, the trial court erred by denying Thompson's motion to suppress evidence obtained following the unlawful entry into his apartment.

*Judgment reversed. Dillard, P. J., and Pipkin, J., concur*.