## A98A2005. THE STATE v. GALLUP.

(512 SE2d 66)

McMURRAY, Presiding Judge.

Defendant was charged with possession of marijuana with intent to distribute, after police seized three large plastic bags containing approximately thirty pounds of marijuana from a refrigerator discovered in a self-storage bin rented by defendant. Defendant conceded that, in the course of investigating vandalism and possible burglary, Investigator James Vick of the Albany Police Department had a right to enter Unit 61 but argued the officer had no right to open the closed refrigerator found therein.

The facts are undisputed: This seizure was conducted pursuant to a warrant. But that warrant was issued based upon information obtained by an earlier warrantless opening of a closed and operating refrigerator in a storage unit rented by defendant, one of eighty-three other such units vandalized by unknown persons in a single night.

When Christy Brown, co-owner of Mann's Moving & Storage, arrived at the scene some time after 8:15 a.m. on August 4, 1997, everything was in disarray. Someone had taken "some type of crowbar device and a mallet . . . to get the lock mechanism off . . ." each damaged unit. Almost all the units, including Unit 61, were left open, that is, with the roll-top doors ajar. It was Investigator Vick who called Brown's attention to Unit 61, containing the refrigerator. Brown confirmed her standard rental contract does not expressly forbid renters from plugging refrigerators into the electrical outlet for the overhead light, but the agreement does contain a clause whereby " '[t]he occupant agrees that the property will not be used for any unlawful purpose. . . .' " The agreement also gave the owner permission, " 'with or without notice to occupant, [to] enter the leased space for purposes of inspection, to make repairs or alterations, or in any case of fire or other emergency.' " Brown considered this event to be an emergency.

unauthorized impoundment of her car. Compare *Gooden v. State*, 196 Ga. App. 295, 297 (395 SE2d 634).

When Investigator Vick entered Unit 61, he was looking for "[a]nything that would identify the owner and any physical evidence such as latent prints. . . . The first thing [he] saw was a four wheeler. [Investigator Vick] had just recently worked a case [involving stolen] four wheelers . . . [so he] bent and got the VIT number which is on the Ford and ran it[, but it turned out not to be stolen property]. [He] also noticed a small, compact, 3 foot refrigerator. . . . [Investigator Vick] went into the refrigerator . . . [l]ooking for anything that would identify the victim. Possibly prescription medications with the victim's name on it. Anything. . . . [He] saw what appeared to be 3 pounds of marijuana . . . [i]n a plastic baggie. . . . When [he] saw [this, Investigator Vick] closed the refrigerator. [He] saw Christy Brown down at the exact opposite end of the storage unit from where [he] was. She was talking to some of her co-workers. [Investigator Vick] called her down . . . to the unit and advised her that she might want to look into the unit[, specifically] referring to . . . [t]he refrigerator." Investigator Vick sealed Unit 61 and notified his superior. When narcotics investigators arrived, Investigator Vick turned the matter over to them.

Investigator Vick confirmed he had no reason to believe anything was missing from Unit 61 when he inspected it; there "were very few items in that unit and they were very large items. Four wheeler, a desk and a refrigerator. . . . [Investigator Vick understood that he] needed to get in touch with [the renter] to find out if he had lost anything." He also understood "[t]here would be no need to take an inventory of what was still in the unit." Officer Kenneth Dwayne Johnson, an investigator with the Albany Dougherty Drug Unit, was the affiant in support of the search warrant. He confirmed his personal knowledge was obtained when Investigator Vick "pointed out something to [him, namely] 3 large ziplock bags of marijuana . . . located inside the refrigerator."

Pursuant to OCGA § 5-7-1 (a) (4), the State appeals from the trial court's order granting defendant's motion to suppress. *Held*:

1. The trial court ruled that defendant had a reasonable expectation of privacy in the contents of the refrigerator and that opening the refrigerator by Inspector Vick was a search, i.e., a quest for information by a state agent, that "was not supported by a warrant[, nor] based on a plain view observation from a lawful vantage point [because that act exceeded] the scope of his legitimate presence within Unit 61." The trial court further ruled that the inevitable discovery rule was inapplicable, and that no other basis existed for authorizing this warrantless search not based upon probable cause to believe the refrigerator contained contraband. The State's first enumeration contends the trial court erred in granting the motion to suppress because "the evidence seized was in plain view."

(a) "While the trial court's findings as to disputed facts in a ruling on a motion to suppress will be reviewed to determine whether the ruling was clearly erroneous, where[, as here,] the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, the trial court's application of the law to undisputed facts is subject to de novo appellate review." (Citations omitted.) *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474).

(b) "The Georgia constitutional provisions regarding search and seizure, Art. I, Sec. I, Par. XIII, are substantially the same as the Fourth Amendment provisions of the U. S. Constitution. [Cit.]" *Galbreath v. State*, 213 Ga. App. 80, 82 (2) (443 SE2d 664). "Thus, the constitutional protection has been held to extend to people, houses, automobiles, boats, the area within the curtilage of a house, apartments, hotel rooms, public telephone booths, offices, desks, and a coin-operated locker in a bus station." (Footnotes omitted.) Daniel, Ga. Criminal Trial Practice (1997), § 4-2. Consequently, we disagree with the State's contention that defendant had a diminished expectation of privacy in the closed container (refrigerator) in the once-locked storage unit he rented. See, e.g., *State v. Stewart*, 191 Ga. App. 750 (382 SE2d 677), judgment adhered to after remand, 203 Ga. App. 829 (418 SE2d 110).

(c) We agree with the trial court that the marijuana contained in an operating, closed refrigerator was not in the plain view of Investigator Vick. "[I]t has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence. The plain view exception to the warrant requirement is based on the analysis that the particular item of incriminating evidence has not been discovered as the result of a search. Plain view is best understood not as an independent exception to the Warrant Clause but simply as an extension of whatever prior justification might exist for an officer's access to an object or situation. The plain view doctrine does not give an officer carte blanche to pick up any article his eyes might light upon, but where he is lawfully on the premises and while properly there sees in plain view what may be evidence relating to, and instrumentalities of, a crime in the immediate vicinity . . ., the preservation of the evidence may be justified under the exigent circumstances rule." (Citations, punctuation and emphasis omitted.) *Galbreath v. State*, 213 Ga. App. 80, 82 (2), supra. But the "plain view" doctrine comes into play *only* after the police are legally in a position to view the contraband. *Au v. State*, 258 Ga. 419 (369 SE2d 905).

In the case sub judice, the lawful extent of Investigator Vick's presence in Unit 61 was limited by the nature of the emergency, namely, to investigate vandalism and possible burglary. A limited

intrusion is "justified by an officer's reasonable belief that (1) the building's owner or [lawful] occupants [such as defendant] would not object to the intrusion, and (2) circumstances are sufficient to give the officer an 'articulable suspicion' that unauthorized persons are [still] on the premises [or that perishable evidence may be lost]. [Cits.]" *Banks v. State*, 229 Ga. App. 414 (2), 417 (493 SE2d 923). The presence of the refrigerator was odd, but not itself illegal nor a material breach of the rental agreement. There was nothing suspicious or dangerous about that refrigerator that would authorize a non-consensual warrantless search. The marijuana was not in anyone's view until Investigator Vick opened the refrigerator door. But by opening the door, Investigator Vick exceeded, in our view, the lawful scope of his permission to be in Unit 61 to investigate vandalism and burglary. We are not persuaded by the State's argument that Investigator Vick was exercising a legitimate community "caretaker" function, since he had no intention of impounding the refrigerator for safekeeping or taking an inventory of items still remaining in the unit. Compare *Newman v. State*, 216 Ga. App. 73, 74 (1) (453 SE2d 117). The State failed to show that Investigator Vick was, under Georgia law, entitled to open the closed refrigerator. The trial court correctly ruled that the "plain view" doctrine was inapplicable to justify the initial non-consensual warrantless search.

2. The State next contends that exigent circumstances at the time authorized a warrantless search, because Investigator Vick was "called to the scene of eighty[-some possible] burglaries[, where one] section of the security fence . . . was down[; the] doors of the units were in various states of disrepair[; property] from many of the units was scattered out between the buildings[; and] the officer had a duty to assist in . . . securing this property before looters and or the elements exacerbated the situation."

The presence of contraband without more does not give rise to exigent circumstances. *Davis v. State*, 262 Ga. 578, 582 (2) (422 SE2d 546). This investigation commenced around 8:15 a.m., apparently long after the marauders departed. Securing the entire property would be good police work, emergency or no, simply to maintain the status quo while renters are notified to come examine their units and determine whether anything was stolen. But opening the refrigerator door without the owner's consent would not enable the officer to determine whether anything was missing. " 'We do not question the right of the police to respond to emergency situations. Numerous state and federal cases have recognized that the Fourth Amendment [and perforce Art. I, Sec. I, Par. XIII of the Georgia Constitution (1983)] [do] not bar police officers from making warrantless entries and searches when they reasonably believe that a person is in need of immediate aid. Similarly, when police come upon the scene of a homi-

cide they may make a prompt warrantless search of the area to see if there are other victims or if a killer is still on the premises. . . .' [Cit.]" *Gilreath v. State*, 247 Ga. 814, 818 (1), 820 (279 SE2d 650). But the circumstances presented in this case do not rise to the level of emergency involving immediate threats to life or limb. There is in Georgia no "good faith" exception to our statutory exclusionary rule, OCGA § 17-5-30. *Gary v. State*, 262 Ga. 573 (422 SE2d 426). In our view, the trial court correctly determined that no exigent circumstances justified the warrantless non-consensual search of defendant's closed refrigerator in his vandalized storage unit.

3. Our affirmance based upon principles of Georgia law renders it unnecessary to determine whether this search would be authorized under a federal constitutional analysis.

*Judgment affirmed. Blackburn and Eldridge, JJ., concur.*

DECIDED FEBRUARY 9, 1999.

*Kenneth B. Hodges III, District Attorney, Robert E. Perrine, Jr., Assistant District Attorney*, for appellant.

*Donaldson, Bell & Pickett, George P. Donaldson III, Reginald J. R. Bell, Jr.*, for appellee.