A04A1949. KIRSCHE v. THE STATE.

(611 SE2d 64)

ADAMS, Judge.

An officer lawfully in a place who sees evidence relating to a crime in plain view may seize that evidence. In this case, two of three officers investigating a domestic complaint at night went to the back of William Lester Kirsche's residence as a safety precaution as the third officer knocked on the front door. While in the backyard, one of the officers discovered what appeared to be a large marijuana plant. Based on this evidence, Kirsche was convicted on charges of manufacturing marijuana and possession of marijuana. He now appeals denial of his pre-trial motion to suppress the marijuana discovered by the officers, and the question raised is whether the officers were lawfully in Kirsche's backyard.

A trial judge's findings of fact on a motion to suppress should not be disturbed if there is any evidence to support them; determinations of fact and credibility must be accepted unless clearly erroneous; and the evidence must be construed most favorably to the upholding of the trial court's findings and judgment. *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994); *Jackson v. State*, 258 Ga. App. 806, 807-808 (2) (575 SE2d 713) (2002).

The trial court set forth its findings of facts as follows:

Hall County deputies, responding to a "domestic call" from the defendant's daughter, found her at the home of a neighbor. She told them that she and her father had had a disagreement about school, that he had gotten irate and that she had gotten scared and left the home. She told the deputies also that her father was growing marijuana in the backyard of their residence. The deputies then called agents from the Multi-Agency Narcotics Squad (MANS Unit). Agent

Grindle of the MANS Unit arrived in response and talked to the deputies and to the defendant's daughter. Agent Grindle then asked the deputies to accompany him as he went to talk to the defendant. Grindle told the deputies to "secure the rear of the residence" while he talked with the defendant. The deputies went to the back door (which was located on the side of the house). Deputy Burton testified at the suppression hearing that he knew that when they went to the defendant's residence that Grindle was probably going to ask for consent to search. He further testified that he went to the rear of the residence to secure it for safety and not to search for the marijuana the defendant's daughter had reported was growing there. However, in approaching the back door Deputy Burton ran into a marijuana plant, so large it had a "trunk," just off the patio about 10-15 feet from the door of the residence. He recognized it from his nine years of training and experience as a law enforcement officer, having actually seen marijuana 75-100 times. He reported his find to Agent Grindle and stayed with the defendant while Agent Grindle took a look. The defendant was arrested for manufacturing marijuana and then a search warrant was obtained.

The evidence also shows that it was 9:00 p.m. and very dark; that the lot had many trees on it; that the marijuana tree was approximately ten feet tall; that one could not see the marijuana tree from the street; and that there was nothing about the appearance of the front of the house that indicated it was acceptable to walk around the back. Deputy Burton also testified that it was standard policy under the circumstances to go into the backyard for safety or security reasons; but that there were no urgent circumstances requiring him to go into the backyard. He testified that the daughter said that her father was upset with her academic performance. No evidence was presented that the officers contacted any other authorities about the possibility that a child might be in danger; the mother returned home during the subsequent search of the premises.

After reviewing the law regarding search and seizure, the court concluded that the officers had validly entered onto the property because their actions constituted a reasonable officer safety precaution:

Officers attempting to deal with domestic disturbances and investigating alleged felonies face unknown, but constant, danger. They must be alert and take reasonable precautions to protect themselves and others present. Here, it was

reasonable for all exits to the defendant's residence to be "secured." The defendant may still have been irate, or become irate again upon seeing the officers. Under such circumstances, with the officers being at the back door, had the defendant been inclined to go out the back door in order to surprise and harm the officers in front, he would have seen the deputies at the back door and may have been deterred from leaving the residence. One cannot say that this would have happened or that there was certain danger. But many law enforcement officers have been injured or killed where danger was not apparent. What is required under circumstances such as these is that the actions of the officers be reasonable. See generally, *State v. Schwartz, et al.*, 261 Ga. App. 742 [(583 SE2d 573)] (2003). This court believes they were and that Deputy Burton had a legally valid reason to be where he was when the marijuana came into plain view.

An officer who is lawfully in a place who sees in plain view evidence relating to a crime, or instrumentalities of a crime, may seize that evidence. *Galbreath v. State*, 213 Ga. App. 80, 82 (2) (443 SE2d 664) (1994). See also *Horton v. California*, 496 U. S. 128, 135-136 (110 SC 2301, 110 LE2d 112) (1990) (prior valid justification for intrusion required). It is true that Agent Grindle did not need a warrant to approach Kirsche's front door to make investigative inquiries. *Gilreath v. State*, 247 Ga. 814, 819-821 (279 SE2d 650) (1981). But even if the officers had probable cause to investigate a crime, the Fourth Amendment prohibited them from entering Kirsche's home or its curtilage without a warrant absent consent or a showing of exigent circumstances. *Carranza v. State*, 266 Ga. 263, 264-265 (1) (467 SE2d 315) (1996); *Bunn v. State*, 153 Ga. App. 270, 274 (265 SE2d 88) (1980). See also *State v. Gallup*, 236 Ga. App. 321, 323 (1) (b) (512 SE2d 66) (1999) (constitutional protection extends to curtilage of home).[1]

Here the officers had neither consent nor exigent circumstances. See *Davis v. State*, 262 Ga. 578, 582 (3) (422 SE2d 546) (1992) (presence of contraband without more does not give rise to exigent circumstances); *Gallup*, 236 Ga. App. at 324 (same).

The trial court justified the intrusion based on Deputy Burton's testimony that he was securing the backyard for safety reasons. Burton testified he and the third officer went around back because of an allegation of drugs and a still very upset man. He explained that because the daughter was scared enough to leave the house, "I felt

---

[1] The State does not contend that the plant was outside of the curtilage of the home.

like we had to secure ourselves as well." He added that Agent Grindle of the drug crime unit had directed him to secure the back of the house and that he had no intent of searching the area. Therefore the trial court's finding that Burton was motivated by safety concerns and not an intent to search is not clearly erroneous.

But if officers are not responding to an emergency, as is true in this case, there must be compelling reasons and exceptional circumstances to justify a warrantless entry. *State v. Sims*, 240 Ga. App. 391, 392 (523 SE2d 619) (1999); *Bunn*, 153 Ga. App. at 274. Officer safety can be a sufficient reason. See *Owens v. State*, 236 Ga. App. 534, 535-536 (512 SE2d 394) (1999). An officer is justified in taking appropriate self-protective measures "when he lawfully confronts an individual and reasonably believes him to be armed or otherwise dangerous to the officer or others." (Citation and punctuation omitted.) *Pace v. State*, 219 Ga. App. 583, 585 (466 SE2d 254) (1995).

But here there was no testimony that Kirsche was thought to be armed. Moreover, we find no case law to support the proposition that an allegation that someone is irate constitutes a compelling reason or an exceptional circumstance that would justify warrantless entry onto a person's property. See *King v. State*, 217 Ga. App. 889, 891 (459 SE2d 605) (1995) (that defendant was agitated and backed up into his residence did not justify deputy's advance into home as a response to any perceived safety threat).

The State argues that the officers were justified in entering Kirsche's backyard because it is not unusual for an officer to go to the back door to contact the resident if he is unable to contact them at the front door. See, e.g., *State v. Lyons*, 167 Ga. App. 747, 748 (307 SE2d 285) (1983). Under these circumstances, the plain view doctrine is in effect regardless of whether the officer expected or suspected that he would discover the object seized. *State v. Zackery*, 193 Ga. App. 319, 320 (387 SE2d 606) (1989). But these cases are distinguishable on the facts. The officers in this case did not proceed to the backyard because they were unable to get someone to come to the front door. In fact, Kirsche responded to Agent Grindle's knock. Rather, without a warrant, exigent circumstances, or consent the officers entered an area of Kirsche's home in which they were not entitled to be.

The State also contends that the officers were justified in making a "protective sweep" of the premises in accordance with *Maryland v. Buie*, 494 U. S. 325, 337 (V) (110 SC 1093, 108 LE2d 276) (1990) (allowing a protective sweep of a house during an arrest where the officers have "a reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene"). But, use of protective sweeps has been limited to sweeps conducted in connection with an in-home arrest, see *State v. Mixon*, 251 Ga. App. 168, 170 (554 SE2d 196) (2001), or where

the officers have articulable facts suggesting that an area may be harboring someone who poses a danger to them. See *United States v. Carter*, 360 F3d 1235, 1242-1243 (III) (B) (10th Cir. 2004) (without articulable facts suggesting that backyard or garage harbored anyone who posed a danger, officer's sweep of those areas was unreasonable under the Fourth Amendment). Neither of these fact patterns is present here.

Finally, the State has not attempted to carry its burden to show that the "independent source" exception or the "inevitable discovery" exception to the exclusionary rule are applicable here. See *Davis v. State*, 262 Ga. at 583-584 (State did not show that a warrant could have been obtained based solely on a telephone call from a ten-year-old child, in which he stated that there were drugs in the house).

"It is the general rule that a warrant is required to search the curtilage, and the yard immediately surrounding one's dwelling is well within the curtilage. [Cits.]" *Phillips v. State*, 167 Ga. App. 260, 261 (1) (a) (305 SE2d 918) (1983). The trial court erred by refusing to grant Kirsche's motion to suppress.

*Judgment reversed. Ruffin, C. J., and Bernes, J., concur.*

DECIDED FEBRUARY 21, 2005.

*Whitmer & Law, George H. Law III*, for appellant.
*Jason J. Deal, District Attorney, Alison W. Toller, Assistant District Attorney*, for appellee.