A06A1796. THE STATE v. STARKS.
(635 SE2d 327)

BLACKBURN, Presiding Judge.

The State appeals the grant of Octavia Starks's motion to suppress, in which Starks successfully argued that the police had no legal basis to conduct the traffic stop that led to the discovery of marijuana in his vehicle. Because the trial court did not clearly err in disbelieving the police testimony about the alleged reason for the stop, we affirm.

When reviewing a trial court's order on a motion to suppress, we apply the "any evidence" standard:

> A trial court's order on a motion to suppress will not be disturbed if there is any evidence to support it, and the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. We construe all evidence presented in favor of the trial court's findings and judgment.

*Williams v. State.*[1] See *Tate v. State.*[2] Starks's own direct testimony, which contradicted the State's evidence, as well as his intense and revealing cross-examination of the police officer's testimony, remove this case from the category of undisputed facts to which we would apply a de novo standard of review. Cf. *Vansant v. State*[3] ("where the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, the trial court's application of the law to undisputed facts is subject to de novo appellate review").

---

[1] *Williams v. State*, 273 Ga. App. 637, 638 (615 SE2d 789) (2005).
[2] *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994).
[3] *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994).

Construed in favor of the trial court's ruling, the evidence shows that one afternoon, two officers in a patrol car followed Starks in his car for some time as he proceeded toward his mother's home. The officers observed no speeding, no weaving, no crossing lines, nor any other traffic infraction. Nevertheless, they activated their blue lights and pulled Starks over, asking him for his driver's license and proof of insurance. While one officer returned to the patrol car to verify the insurance information, the other spoke with Starks through his driver's side window. Starks asked the second officer why he was pulled over, to which he did not give Starks "any answer."

Fifteen minutes later, the first officer returned, confirming that the insurance on the vehicle was current and valid. The second officer claimed that he could smell raw marijuana in Starks's vehicle, which the first officer claimed to confirm. When Starks declined a request to search his vehicle, the officers detained him another half-hour until a drug dog arrived to do a "free air" search of the vehicle, which resulted in the dog's alerting to the presence of drugs in the vehicle and in the vehicle's subsequent search. Police discovered over a pound of marijuana in the vehicle, leading to Starks's arrest.

Starks was charged with one count of marijuana possession and one count of marijuana possession with intent to distribute. He moved to suppress the marijuana, arguing that police had no valid reason to stop his vehicle. At the hearing on the motion to suppress, the first officer did not testify but the second officer did, testifying that the only reason they stopped Starks was that while following him, they had run his tag number through the state computer, which informed them that he had no valid insurance on the vehicle. Cf. *Whren v. United States*[4] ("the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred"). Disbelieving this explanation, the court expressly found the officer's testimony to be "suspect and insufficient" and granted the motion to suppress. The State appeals, arguing that the court was required to believe that the officers had run a computer check (showing no insurance) before stopping Starks's vehicle.

*Tate*, supra, 264 Ga. at 56 (3), expressly rejected this notion. "Credibility of witnesses and the weight to be given their testimony is a decision-making power that lies solely with the trier of fact. The trier of fact is not obligated to believe a witness even if the testimony is uncontradicted and may accept or reject any portion of the testimony." Id. Indeed, "[f]actors such as demeanor, contradictory or inconsistent statements and evidence that an officer had 'ulterior

---

[4] *Whren v. United States*, 517 U. S. 806, 810 (II) (116 SC 1769, 135 LE2d 89) (1996).

motives' can all lead a finder of fact to disregard testimony by an officer that an accused was violating the law." Id. at 56 (3), n. 5. As in *Tate*, "[w]e conclude from reading the entire order that the trial court chose not to believe the deputy's testimony that [Starks] committed a traffic violation." Id. at 56-57 (3).

Here, ample evidence supported the trial court's findings regarding the second officer's lack of credibility and regarding the flaws in his assertion that the officers had received computer information of "no insurance." According to Starks, police did not give "any answer" when Starks asked them why they had stopped him. No documentation showed that an inquiry into Starks's insurance status was made before the stop or if made, what that result was. The second officer contradicted his own testimony from a prior hearing regarding whether he even requested proof of insurance when he confronted Starks at the stop, leading to the possible inference that insurance was not an issue when the stop began. In any case, Starks quickly produced proof that he had valid insurance, which the first officer was able to confirm.[5] The second officer's surprise testimony in court that they were following Starks because he had just left a drug house was reflected nowhere in his police report on the incident, which omission was quite disturbing to the trial court and which further discredited the officer's testimony. Finally, the officer conceded that, as testified by Starks, he may have handcuffed Starks *prior to* the discovery of any contraband (although he could not remember this important fact clearly), even though he could not articulate a reason for handcuffing Starks prior to the marijuana being found.

Based on these inconsistent and vague statements and the officer's demeanor as observed by the trial court, the court twice found the officer's testimony regarding the reason for the stop to be "suspect and insufficient" and concluded there was no legal basis for the stop. As in *Tate*, supra, 264 Ga. at 56-57 (3), we have repeatedly held that a trial court has every right to disbelieve police testimony, even if it is uncontradicted. See *State v. Hester*[6] ("trial judge may disbelieve the state's evidence, even if it is uncontradicted and unimpeached"); *State v. Alexander*[7] ("trial court was further authorized to disbelieve the officers about [the defendant's violation], even though their testimony was uncontradicted by defendant"). Here, the testimony was contradicted and inconsistent, giving yet additional impetus for the trial court's findings of incredulity. See *State v.*

---

[5] Curiously, the phone-call confirmation of insurance during the middle of a business day took 15 minutes, leading to the possible inference that the first officer delayed the confirmation so as to give his fellow officer more time to interrogate Starks.

[6] *State v. Hester*, 268 Ga. App. 501, 505 (602 SE2d 271) (2004).

[7] *State v. Alexander*, 245 Ga. App. 666, 667-668 (538 SE2d 550) (2000).

*Brown*[8] (trial court could disbelieve officer's testimony where vagueness and inconsistencies were shown). Accordingly, the trial court did not clearly err in disbelieving the officer's testimony about the alleged computer insurance inquiry and in finding that the stop was pretextual and without a legal basis.

*Judgment affirmed. Mikell and Adams, JJ., concur.*

DECIDED AUGUST 8, 2006.

*Gwendolyn Keyes Fleming, District Attorney, Catherine R. Blackburn, Assistant District Attorney*, for appellant.
*Herbert Shafer*, for appellee.

---

[8] *State v. Brown*, 278 Ga. App. 457, 460-462 (629 SE2d 123) (2006).
[1] *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998).