## A07A0757. THE STATE v. GRAY.
### (645 SE2d 598)

MIKELL, Judge.

Angela Gray was indicted on charges of possession of methamphetamine with intent to distribute, criminal attempt to manufacture methamphetamine, and possession of marijuana of less than one ounce. Gray filed a motion to suppress, arguing that the search of her home violated her constitutional rights. The trial court entered an order granting Gray's motion to suppress, from which the state appeals. We affirm.

> When reviewing a trial court's order on a motion to suppress, we apply the "any evidence" standard: A trial court's order on a motion to suppress will not be disturbed if there is any evidence to support it, and the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. We construe all evidence presented in favor of the trial court's findings and judgment.[1]

So construed, the evidence shows that on February 23, 2006, at approximately 7:40 p.m., Deputy Sheriff Edward Moorhead of the Decatur County Sheriff's Office initiated a traffic stop of a Ford Explorer because the taillights on the vehicle were not illuminated. Moorhead testified that as he exited his patrol car, he saw the passenger, Chris Walker, throw a piece of paper from the passenger-side window; that he approached the driver, William Ezell, and explained the reason for the stop; and that Ezell explained that he believed the taillights were out because of a blown fuse. While Moorhead was talking to Ezell, Deputy Michael Logue arrived, and Moorhead instructed Logue to talk to Walker about his littering violation.

After talking with Walker, Logue asked Ezell for consent to search the vehicle, which Ezell refused because the vehicle did not belong to him. The officers were told that the vehicle belonged to Angela Gray and determined that the vehicle's registration identified Nancy Gray as the owner. Despite not receiving Ezell's consent to search the vehicle, Logue deployed his canine, Bear, for the purpose

---

[1] (Citations and footnotes omitted.) *State v. Starks*, 281 Ga. App. 15 (635 SE2d 327) (2006).

of detecting narcotics, and Bear alerted on the passenger side of the vehicle. Logue then searched the vehicle, finding drug paraphernalia including a brass fitting or tube, and potential methamphetamine lab-related items. Logue and Moorhead contacted narcotics investigator Billy Hunter, who arrived an hour later. The officers, who were traveling in four different vehicles,[2] followed Ezell to Angela Gray's residence to speak to her about the defective condition of the Ford Explorer and about the items found therein.

The property on which the residence was located was enclosed by a sizable, black wrought iron electronically controlled gate that could not be opened by hand unless the person attempting to open it knew to flip the switch in the locked box to the left of the gate. Moorhead testified that Ezell used an automatic door opener to enter the gate to access the property. Once they parked the cars, Hunter and Moorhead followed Ezell and Walker to the back door of the residence. Hunter testified that he observed several items often used in the manufacture of methamphetamine while en route to the door. A young woman, who identified herself as Shannon Cobb, met them at the back door. Hunter testified that while standing at the door talking to Cobb, he saw suspected marijuana inside a cigarette pack in plain view on the living room counter. Moorhead recalled that from his position behind Hunter, he could see through the kitchen window and observed brass fittings, tubes, and "things of that nature" along with a plastic bag on the kitchen counter.

Hunter asked Cobb to step outside and for consent to search the residence. Cobb told him that the house was not hers and that she could not give him consent to search. Hunter testified that despite Cobb's refusal, he entered the residence to secure it and did a walk-through to make sure that no one was present. Hunter then left the property, leaving Moorhead and Logue there, while he sought a search warrant.

Hunter further testified that he obtained a search warrant at 11:30 p.m. that evening but did not execute it until the early morning on the following day, February 24; that he had to call Moorhead to let him onto the property once he returned with the warrant because of the gate; that during the search, the officers seized marijuana and several items used to manufacture methamphetamine; and that he never saw Angela Gray that night. On cross-examination, Hunter, Logue, and Moorhead all admitted that before proceeding to the residence, they did not ask Ezell and Walker if they lived there, had clothes there, helped to pay the rent, mortgage, or any other bills at

---

[2] By the time the officers proceeded to the residence, Investigator Geter, who did not testify at trial, was also on the scene.

the residence or why they had been there. Moorhead also admitted that Ezell and Walker gave conflicting stories about from where they had departed prior to being stopped and testified that Hunter knew about their conflicting stories, which Hunter denied. Hunter acknowledged on cross-examination that he had no idea as to whether Ezell had authority to let the officers onto the property; that once Ezell arrived at the property, the broken taillights were no longer an issue as Ezell was not subject to the rules of the road while on private property; that he knew the residence belonged to the Gray family; and that he did not ask Cobb any questions to establish her connection to the residence.

In ruling on Gray's motion to suppress, the trial court found that the officers illegally searched the curtilage of the property as they did not have a right to be where they were when they observed the items in question in plain view; that Hunter then entered the residence without consent, which entry constituted a search, without a warrant; and that there were no exigent circumstances that justified a warrantless entry into the residence. After construing all the evidence in favor of the trial court's findings, we affirm.

1. In its first enumerated error, the state argues that the evidence presented at the hearing established that Ezell and Walker had a sufficient relationship to the property or possessed common authority to grant consent to law enforcement officers to enter the curtilage of the property to speak to Angela Gray. The trial court found otherwise.

Under the Fourth Amendment, police officers are prohibited from entering a person's home or its curtilage without a warrant absent consent or a showing of exigent circumstances.[3] In a case such as this involving a third party's consent to search,

> the State has the burden to prove not only that consent was voluntary but that the third party had authority over, and other sufficient relationship to, the premises sought to be inspected. The type of authority or relationship to the premises by the third party must constitute the following: mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others

---

[3] *Kirsche v. State*, 271 Ga. App. 729, 731 (611 SE2d 64) (2005). See also *State v. Randolph*, 278 Ga. 614 (604 SE2d 835) (2004) (Fourth Amendment prohibits the warrantless entry of a person's home to make an arrest or search for specific objects).

have assumed the risk that one of their number might permit the common area to be searched.[4]

To resolve the issue of third party consent, we must determine "whether the objective facts available to the officer at the time would warrant a person of reasonable caution to conclude that the third party had authority over the premises."[5] The officer's belief that the third party has authority over another person's property to consent to the search thereof should be based on information previously obtained in his investigation as well as facts and circumstances existent at the time of the search, particularly where there are no exigent circumstances which authorize bypassing the constitutional safeguard of obtaining a warrant.[6]

The evidence in the instant case shows that the only fact available to the officers upon which they could have concluded that Ezell or Walker had authority to allow access onto the Gray property was that Ezell had an automatic door opener which he used to open the gate. The officers testified unequivocally that they asked no questions of Ezell or Walker to determine if they had such authority. Hunter stated that he had "no idea" as to whether Ezell had the authority to let the officers onto the property and that he knew that the property belonged to the Gray family. The officers could not assume that because Ezell was driving a vehicle owned by Nancy Gray that he was authorized to grant access to the Gray property. Weighing the evidence about the door opener, and evaluating the credibility of the witness were matters solely and completely within the province of the trial court. Our role is only to determine whether there was any evidence to support the trial judge's determination. Clearly there was some evidence to support the decision below.

2. The state argues that the trial court erred in finding that Investigator Hunter's sweep through the house was warrantless and constituted an illegal search. Again, we disagree.

"A protective sweep is a limited search of the premises primarily to ensure officer safety by detecting the presence of other occupants."[7]

---

[4] (Citations, punctuation and footnote omitted.) *Brown v. State*, 261 Ga. App. 351, 353 (1) (582 SE2d 516) (2003). See also *Walsh v. State*, 236 Ga. App. 558, 561 (2) (512 SE2d 408) (1999), citing *United States v. Matlock*, 415 U. S. 164, 171 (II), n. 7 (94 SC 988, 39 LE2d 242) (1974).

[5] (Citation omitted.) *Brown*, supra at 354 (1).

[6] *Browning v. State*, 176 Ga. App. 420, 423 (1) (336 SE2d 41) (1985); *Brown*, supra.

[7] (Punctuation omitted.) *State v. Charles*, 264 Ga. App. 874, 875 (1) (592 SE2d 518) (2003), citing *State v. Mixon*, 251 Ga. App. 168 (554 SE2d 196) (2001).

The seminal United States Supreme Court case authorizing this type of warrantless entry, *Maryland v. Buie*,[8] held that officers are authorized to perform a protective sweep in connection with an in-home arrest when they possess articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene.[9]

The trial court correctly ruled that the sweep in this case did not comply with these rules.

We note at the outset that there was no "in-home" arrest, which would have justified the sweep, as no one had been arrested at the time the sweep occurred.[10] Furthermore, whether the officers possessed a reasonable belief, based on articulable facts, that the home harbored a dangerous person was a judgment to be made by the trial court and not by us on appeal. Hunter testified that Cobb told him that Gray was not home and that there was no one else in the house. Moorhead acknowledged that the officers had no other indication that any other persons, armed or not, were in the house, or that there was any other kind of emergency in the house. Moorhead reasoned that the sweep was necessary because "there may or may not have been a working meth lab in the home." However, the "presence of contraband without more does not give rise to exigent circumstances[,]"[11] sufficient to authorize a warrantless entry into a home. A fortiori, the trial court's finding that Hunter's protective sweep of the home was a warrantless, illegal search was not clearly erroneous, and the trial court appropriately granted Gray's motion to suppress.

*Judgment affirmed. Johnson, P. J., and Phipps, J., concur.*

DECIDED APRIL 16, 2007.

*Joseph K. Mulholland, District Attorney, Michael T. Garrett, Assistant District Attorney*, for appellant.

---

[8] 494 U. S. 325 (110 SC 1093, 108 LE2d 276) (1990).

[9] (Punctuation and footnote omitted.) *Nelson v. State*, 271 Ga. App. 658, 660 (1) (610 SE2d 627) (2005), citing *Maryland v. Buie*, supra at 334 (III). See also *Elliot v. State*, 274 Ga. App. 73, 76 (2) (616 SE2d 844) (2005); *Charles*, supra.

[10] Cobb was arrested after the sweep because Moorhead checked her driver's license and determined that there was a warrant for her arrest on a shoplifting charge.

[11] (Citations and punctuation omitted.) *Davis v. State*, 262 Ga. 578, 582 (3) (422 SE2d 546) (1992).

*Farmer, Farmer, Malone & Sherrer, Richard M. Adams*, for appellee.