Boggs, Judge.
Treland Jones, Ladairius Vickers, andDeonte Sims were charged by accusation with two counts of violation of the Georgia Controlled Substances Act.[1] The State appeals from the trial court’s grant of the appellees’ motions to suppress evidence obtained in a warrantless search of a vehicle parked in the driveway of Sims’ home. Because the evidence supports the trial court’s conclusion that officers failed to obtain a warrant and showed no consent or exigent circumstances to support a search or arrest in the curtilage of the residence, we affirm.
A trial judge’s findings of fact on a motion to suppress should not lie disturbed if there is any evidence to support them; determinations of fact and credibility must be accepted unless clearly erroneous; and the evidence must be construed most favorably to the upholding of the trial court’s findings and judgment. [Cits.]
Kirsche v. State, 271 Ga. App. 729 (611 SE2d 64) (2005). And
[w]hether evidence is found within the curtilage of a residence is a mixed question of fact and law. On appeal, we accept the trial court’s findings of fact unless clearly erroneous, but owe no deference to the trial court’s conclusions of law. Instead, we are free to apply anew the legal principles to the facts.
(Punctuation and footnotes omitted.) Rivers v. State, 287 Ga. App. 632, 633-634 (1) (b) (653 SE2d 78) (2007).
So viewed, the evidence shows that Gwinnett County police officers were executing an unrelated arrest warrant when they noticed a car parked in the driveway of the house next door. The car was wholly inside the boundaries of the private property, “fairly closely parked to the actual garage of the home” as shown in a photograph identified by a police witness.[2] A plainclothes officer testified that as he walked through the side yard of the neighboring *273 house, about ten or fifteen feet from the car, he smelled a strong odor of marijuana and observed heavy smoke inside the vehicle. He also testified that he saw individuals in the car passing “something” back and forth but that he did not know what it was. Asked, “You never saw them passing a marijuana cigarette or joint?” he responded, “No,” and that “as far as what they were passing, I don’t know.” He testified that he “assumed that it was marijuana,” (emphasis supplied) and the trial court so found. And the trial court also found that, other than the odor of marijuana, even after approaching the vehicle “the officers still could not see any contraband in plain view to seize within the car.”
The plainclothes officer informed other officers via radio of the occupants of the car and that he “believe[d] they were smoking marijuana. They needed to come and make contact with them.” A police sergeant testified that he observed the car for over an hour. As he walked up the driveway, he could smell the odor of marijuana, but did not see anyone in the vehicle smoking and did not see any marijuana in plain view. He further testified that he did not observe any traffic offense and did not “witness[ ] any criminal activity out of the car or the occupants of the car prior to approaching the driveway.” He could not even see how many people were inside until he was “actually right at the vehicle” and “could actually touch it.”
The sergeant determined that four individuals were in the car and “decided to just detain the individuals in the car until I could get my officers back. Because at that point we were outnumbered, and it became a safety issue for me.” He testified, “I didn’t do an investigation. I decided to detain and hold what I’ve got.” Police removed the four occupants of the vehicle but saw no illegal substances or other evidence “in plain view.” No search warrant was ever obtained, as the officers testified that they relied upon the “automobile exception.” Once the occupants were removed, officers searched the vehicle and found 1.4 grams of suspected marijuana and alprazolam under the front passenger seat. No evidence of burnt marijuana was found. The State did not elicit and the officers did not testify to any exigent circumstances or consent to search, and the trial court found that neither existed.
[Ejven if the officers had probable cause to investigate a crime, the Fourth Amendment prohibited them from entering [the] home or its curtilage without a warrant absent *274 consent or a showing of exigent circumstances. Carranza v. State, 266 Ga. 263, 264-265 (1) (467 SE2d 315) (1996); Bunn v. State, 153 Ga. App. 270, 274 (265 SE2d 88) (1980). See also State v. Gallup, 236 Ga. App. 321, 323 (1) (b) (512 SE2d 66) (1999) (constitutional protection extends to curtilage of home).
(Footnote omitted.) Kirsche, supra, 271 Ga. App. at 731; see also Bowman v. State, 332 Ga. App. 407, 408 (1) (773 SE2d 33) (2015) (“yard immediately surrounding a dwelling falls within the curtilage of a home. [Cit.]”).
Moreover, we have held specifically that a defendant has a reasonable expectation of privacy in a vehicle parked within the curtilage of his home. State v. O'Bryant, 219 Ga. App. 862, 864 (467 SE2d 342) (1996). There, drug agents went without a warrant to O’Bryant’s residence for a “knock and talk” based on “an anonymous tip of possible drug dealing.” Id. at 862. After they knocked on two doors without result, one agent walked over to a truck parked in the driveway beside the house. “While looking inside the closed and tinted windows, he claimed he was able to discern what appeared to be a plastic bag of marijuana, partially hidden under the driver’s seat.” Id. We held that the officers “had finished their official business” and “had no valid reason to look into the truck.” Id. at 863-864. “At the point where [the agent] elected to peer inside the truck, his actions became investigative in nature. Furthermore, the vehicle was within the curtilage of the home, and O’Bryant had a reasonable expectation of privacy in his driveway [Cit.]” Id. at 864.
In this case, as in OBryant, “the vehicle was not on a street or a roadway and the incriminating evidence was not plainly visible,” but required a search of the interior of the vehicle to discover. Id. at 863. No evidence was presented that the officers intended to engage in a “knock and talk” at the residence or its curtilage. They simply approached the car, opened the doors, and removed the occupants. See Gallup, supra, 236 Ga. App. at 324 (1) (c) (opening door of refrigerator exceeded scope of officer’s investigation of burglary). When the officers here searched the interior of the vehicle without a warrant, consent, or exigent circumstances, their discovery of the drugs under the seat was illegal and was correctly suppressed. Id.; see also Bowman, supra, 332 Ga. App. at 408-409 (1).
Both in the trial court and on appeal, the State relies upon the “ ‘automobile exception’ to the warrant requirement imposed by the Fourth Amendment” to contend that the search was permissible, contending that it applies to searches “on private property” on the authority of State v. Sarden, 305 Ga. App. 587, 589 (699 SE2d 880) (2010). But the State, while citing our decision in Sarden, ignores the *275 distinction made there between the curtilage of a private residence and private commercial property. The police arrested Sarden on four outstanding felony warrants after he parked in a convenience store parking lot, and they looked through the window of his car and saw drugs in plain view. Id. at 588. Sarden argued that the automobile exception did not apply because he was parked on private property, but we rejected that contention, relying on numerous Georgia decisions:
The automobile exception is justified on two grounds: the ready mobility of automobiles and the diminished expectation of privacy that citizens have in them. See California v. Carney, 471 U. S. 386, 391-392 (II) (105 SC[t] 2066, 85 LE2d 406) (1985). And “[wjhen a vehicle is being used on the highways, or if it is readily capable of such use and is found stationary in a place not regularly used for residential purposes — temporary or otherwise — the two justifications for the vehicle exception come into play.” (Footnote omitted.) Id. at 392-393 (II). Hence, the automobile exception applies even if the car is not stopped along a highway, but is stationary in a place not regularly used for residential purposes, as in the present case, where Sarden’s car was in a parking space outside a commercial establishment.
(Citation omitted; emphasis supplied.) Id. at 590. Other United States Supreme Court decisions and the Eleventh Circuit decision cited by the State likewise do not involve the search of a vehicle within the curtilage of a defendant’s residence.[3] And to the extent the State attempts to rely upon Harris v. State, 948 S2d 583 (Ala. Crim. App. 2006), holding that the automobile exception continues to apply within the curtilage, “we are not bound by decisions of other states or federal courts except the United States Supreme Court.” Gresham v. Harris, 329 Ga. App. 465, 467 (765 SE2d 400) (2014). We decline to alter the established Georgia rule that vehicles, like any other item or location within the curtilage of a residence, are not to be searched without a warrant, consent, or exigent circumstances. See O’Bryant, supra. Here, the trial court explicitly found that “there was insufficient evidence that the vehicle was even operational to support a finding of exigency” Given that finding of fact, to which we must show *276 deference, the rationale for the automobile exception as delineated in Sarden, supra, does not exist here.
Our Supreme Court has recently reiterated, in a unanimous opinion, that we are bound to three standards in reviewing a trial court’s ruling on a motion to suppress:
First, an appellate court generally must accept those findings unless they are clearly erroneous. Second, an appellate court must construe the evidentiary record in the light most favorable to the factual findings and judgment of the trial court. And third, an appellate court generally must limit its consideration of the disputed facts to those expressly found by the trial court.
(Citations, punctuation and footnotes omitted.) Hughes v. State, 296 Ga. 744, 746 (1) (770 SE2d 636) (2015). We cannot reweigh the evidence, particularly in order to rely upon facts expressly discounted by the trial court.
The special concurrence recognizes that the argument that the search was permissible as incident to the arrest of the appellees under Arizona v. Gant, 556 U. S. 332, 336 (I) (129 SCt 1710, 173 LE2d 485) (2009) was never raised below and is therefore waived, but nevertheless addresses the merits of this analysis. Our ability to consider this issue is precluded because we cannot engage in meaningful analysis precisely because it was not raised below. No evidence was presented as to whether the appellees were in fact arrested or were simply detained for officer safety pursuant to what officers contended was a search under the “automobile exception.” See Brannon v. State, 231 Ga. App. 847, 850 (500 SE2d 597) (1998) (distinguishing between “traffic Terry stop” for officer safety and “a search conducted incident to arrest”). Nor was evidence developed regarding the indicia of arrest or whether the appellants were within “reaching distance” of the vehicle within the meaning of Gant, supra.
Moreover, even if we were to consider this argument, and even accepting the contention that probable cause existed to arrest appel-lees, the officers still were not authorized to enter the curtilage to make the arrests. On the contrary, “to justify a nonconsensual, warrantless intrusion into a person’s home, there must exist probable cause for the arrestor search inside the home and a showing of exigent circumstances. [Cit.]” (Citation and punctuation omitted; emphasis supplied.) Watson v. State, 302 Ga. App. 619, 622 (1) (691 SE2d 378) (2010) (police violated Fourth Amendment by opening trailer door without exigent circumstances). See also Corey v. State, 320 Ga. App. 350, 355 (1) (b) (739 SE2d 790) (2013) (even if officer had probable *277 cause to arrest, no exigent circumstances authorized entry into curtilage to effect arrest). And “the presence of contraband without more does not give rise to exigent circumstances, sufficient to authorize a warrantless entry into a home.” (Citations, punctuation and footnote omitted.) State v. Gray, 285 Ga. App. 124, 128 (2) (645 SE2d 598) (2007). Here, the officers had no more right to enter the curtilage of the home to make an arrest than they did to enter it to institute a search. Indeed, they acknowledged as much by relying upon the “automobile exception” to justify their search.
In addition, the cases cited by the special concurrence are inap-posite here. In Gant, supra, the arrest itself was authorized because of an outstanding warrant for Gant’s arrest and because police observed him driving without a license as he entered his driveway 556 U. S. at 336-337 (I). And in Kirkland v. State, 316 Ga. App. 310 (728 SE2d 907) (2012), we held that an officer initiated a permissible first-tier encounter, and Kirkland consented to a pat-down and to the removal of a bag containing contraband from his pocket. Id. at 312-313. Moreover, while we noted in passing that Kirkland’s car was “backed into a private residence” when the officer approached him, id. at 310, no facts were noted regarding the type of residence, the extent of the curtilage, or the position of the car with reference to “the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by” (Citations and punctuation omitted.) Espinoza v. State, 265 Ga. 171, 173 (2) (454 SE2d 765) (1995). “Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.” (Citation and punctuation omitted.) State v. Outen, 289 Ga. 579, 582 (714 SE2d 581) (2011).
The trial court’s conclusion that the officers failed to obtain a warrant and entered the curtilage without consent or exigent circumstances is supported by the evidence, and we therefore affirm.

Judgment affirmed.

Barnes, P. J., concurs. Rickman, J., concurs specially and in judgment only.

 A fourth defendant, Takhiyra Turner, pled guilty and is not a party to this appeal.

 While the State asserts that “the car pulled up,” this was not supported by the evidence. On direct examination, an officer testified that he was “not 100 percent sure, but I want to recall” that the vehicle arrived during the police surveillance. On cross-examination, however, he acknowledged that was “a guess” and he did not see it pull up as he was not present; he suggested that the other officer might know. That officer, however, testified that he first noticed the car when it was parked in the driveway of the adjoining house and that he did not see it *273 arrive. The trial court found “insufficient evidence that the vehicle was even operational,” and we must construe the evidence to uphold that finding.

 Carney, supra (vehicle parked in a downtown parking lot open to the public and not regularly used for residential purposes); Pennsylvania v. Labron, 518 U. S. 938 (116 SCt 2485, 135 LE2d 1031) (1996) (on public street and on another’s property with owner’s consent); United States v. Lindsey, 482 F3d 1285 (11th Cir. 2007) (vehicle parked in gas station).