**FOURTH DIVISION**
**DILLARD, P. J.,**
**RICKMAN and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS
COURT.  ALL FILINGS MUST BE SUBMITTED WITHIN
THE TIMES SET BY OUR COURT RULES.*

**October 27, 2020**

# In the Court of Appeals of Georgia

A20A0888. EDWARDS v. THE STATE.

BROWN, Judge.

Following a combined suppression hearing and bench trial, Kayra Edwards was found guilty of obstruction of an officer. Edwards appeals her conviction and the trial court's denial of her motion to suppress evidence obtained as a result of the warrantless search of her home. For the reasons set forth below, we reverse the denial of Edwards' motion to suppress as well as her conviction, and remand the case to the trial court.

When conducting an appellate review of a ruling on a motion to suppress evidence, we follow three fundamental principles:

First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of

a jury and should not be disturbed by a reviewing court if there is any evidence to support them. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment.

(Citation and punctuation omitted.) *Francis v. State*, 345 Ga. App. 586, 588 (1) (814 SE2d 571) (2018). However, to the extent that "the evidence at a suppression hearing is uncontroverted and the credibility of witnesses is not in question, we conduct a de novo review of the trial court's application of the law to the undisputed facts." (Citation and punctuation omitted.) *Stephens v. State*, 346 Ga. App. 686, 689 (2) (816 SE2d 748) (2018). Significantly, "where controlling facts are not in dispute, such as those facts discernible from a videotape, our review is de novo." (Citation and punctuation omitted.) *Benton v. State*, 302 Ga. 570, 572 (2) (807 SE2d 450) (2017). Finally, "[w]hen a defendant moves to suppress evidence based on an illegal search, the State bears the burden of proving that the search was lawful." (Citation and punctuation omitted.) *Landers v. State*, 355 Ga. App. 69, 70 (842 SE2d 525) (2020).

The evidence shows that officers from the Rome Police Department ("RPD") responded to a report that Devion Tremaine Neal had pulled a gun on his child's mother. Neal was not at the scene when the officers arrived, but the victim told police

that Neal likely would be at his apartment or at Edwards' house. The officers also learned that Neal left the scene in a blue, four-door car.

The officers first attempted to locate Neal at his apartment, but the apartment was dark, and the described vehicle was not there. The officers proceeded to Edwards' house, where an officer from the Floyd County Sheriff's Department ("FCSD") met them.[1] The FCSD officer informed the other officers that Neal was a convicted felon and that the vehicle Neal was reportedly driving was registered to Edwards. The vehicle was not at Edwards' house when the officers arrived.

Video footage from two of the officers' body cameras was played for the trial court and shows the following. The officers approach Edwards' home and knock on the door. Edwards answers the door, and one of the officers asks her to step outside of the house. Edwards refuses and asks what is going on and why the officers are there. One officer explains that they "have a situation with Devion Neal" and that he is supposedly driving Edwards' vehicle. Edwards denies this, stating her mother has her vehicle. The officer then mentions the smell of marijuana and tells Edwards they have two choices: she can give them consent to search her house or they can obtain

---

[1] At the time, Edwards was employed by the FCSD, and the RPD officers contacted them for assistance.

3

a search warrant. Edwards replies that they can get a warrant. The officer tells Edwards to step outside of the house and sit outside and that the officers have the authority to "clear the house." Edwards steps outside as instructed. The officer asks if anyone else is in the home, Edwards responds that her friend is, and a second female steps outside. The officers then enter the house as Edwards asks why they are going inside. After entering, the officers find Neal.[2] It is undisputed that the officers never attempted to obtain a search warrant of Edwards' house or an arrest warrant for Neal.

During the combined suppression hearing and bench trial, the officers testified that they smelled marijuana as they approached Edwards' house. One officer confirmed that the officers were concerned about people getting rid of drugs, but that the officers did not enter the home "just because [they] smelled marijuana." The officers also testified that they entered the home to do "a safety sweep for other persons within the residence," and that they were concerned Neal was armed. One of the officers acknowledged that they were not in "hot pursuit" of Neal.

---

[2] One officer testified that he saw what appeared to be marijuana in the toilet and assumed that Neal was attempting to flush it. This is not visible in the video.

Edwards was charged with hindering apprehension of a criminal (OCGA § 16-10-50) and obstruction of an officer (OCGA § 16-10-24). She filed a motion to suppress the discovery of Neal in her home as the fruit of an illegal search of her home, and the trial court held a combined suppression hearing and bench trial after Edwards waived her right to a jury trial. At the conclusion of the evidence, the trial court made oral findings of fact on the record.[3]

The trial court rejected the State's argument that the officers were justified in entering Edwards' home to conduct a protective sweep, when the only thing connecting Neal to Edwards' home was the victim's tip. In this regard, the trial court found as follows:

> Every police officer testified honestly they just didn't know [whether Neal was at Edwards' house]. They didn't know. They suspicioned, but suspicion — but they've got no witness who saw it, car's not there. They don't have anything connecting [Neal] there except information given by a victim, which they're uncertain about. They don't know which residence, if either, he might have been at. And [the officers] can't verify that [Neal is] really not at the first place[, Neal's residence].

---

[3] The court later entered a written order denying the motion to suppress "[f]or the reasons stated in open Court. . . ."

5

But, the trial court orally denied Edwards' motion to suppress based on the inevitable discovery doctrine, finding that the officers could have obtained a search warrant based on the odor of marijuana and inevitably would have discovered Neal in the home. The court then found Edwards guilty of obstruction, but not guilty of hindering apprehension of a criminal.

1. In her sole enumeration of error on appeal, Edwards argues that the trial court erred in denying her motion to suppress. Edwards contends that the inevitable discovery doctrine does not apply because the officers were not "actively pursuing" a search warrant before entering and searching her home. We agree.

"When evidence is obtained in violation of the Fourth Amendment, the judicially developed exclusionary rule usually precludes its use in a criminal proceeding against the victim of the illegal search and seizure." (Citation and punctuation omitted.) *Mobley v. State*, 307 Ga. 59, 68 (4) (834 SE2d 785) (2019). However, "the courts have identified a number of exceptions to the usual rule of exclusion," including the inevitable discovery doctrine. Id. Pursuant to this exception, "if the State can prove by a preponderance of the evidence that evidence derived from police error or illegality would have been ultimately or inevitably discovered by lawful means, then the evidence is not suppressed as fruit of the poisonous tree."

*Taylor v. State*, 274 Ga. 269, 274 (3) (553 SE2d 598) (2001), disapproved on other grounds, *State v. Chulpayev*, 296 Ga. 764, 783 (3) (b) (770 SE2d 808) (2015). See also *Teal v. State*, 282 Ga. 319, 323 (2) (647 SE2d 15) (2007). For the doctrine to apply, "there must be a reasonable probability that the evidence in question would have been discovered by lawful means, *and* the prosecution must demonstrate that the lawful means which made discovery inevitable were possessed by the police and were being actively pursued prior to the occurrence of the illegal conduct." (Citation and punctuation omitted; emphasis supplied.) *Mobley*, 307 Ga. at 76 (4) (b). This "'active pursuit rule' . . . is a judicial effort to prevent application of the inevitable discovery doctrine from emasculating the search warrant requirement of the Fourth Amendment." *Teal*, 282 Ga. at 325 (2).

Assuming without deciding that the officers had the requisite probable cause to obtain a warrant based on the odor of marijuana,[4] there is no evidence that the officers had applied for a warrant or even were preparing an application for a warrant prior to entering and searching Edwards' home. See *Mobley*, 307 Ga. at 76-77 (4) (inevitable discovery doctrine did not apply where there was no evidence that officers

---

[4] We agree with the trial court that there was not enough evidence for the officers to obtain a warrant based on their suspicion that Neal might be in the house.

7

applied for warrant, were preparing an application, or contemplated a warrant prior to the search). Accordingly, the State has failed to lay an evidentiary foundation for the application of the inevitable discovery exception.

2. The State argues that this Court should nonetheless affirm the trial court's denial of Edwards' motion to suppress because the officers were justified in entering Edwards' home to conduct a protective sweep or, alternatively, to prevent the imminent destruction of evidence. We find no merit in these contentions.

"As a rule to justify a nonconsensual, warrantless intrusion into a person's home, there must exist probable cause for the arrest or search inside the home *and* a showing of exigent circumstances." (Citation and punctuation omitted; emphasis supplied.) *Watson v. State*, 302 Ga. App. 619, 622 (1) (691 SE2d 378) (2010). Thus, "even if officers have probable cause, absent exigent circumstances or proper consent, warrantless searches and seizures within a home by officers in pursuit of their traditional law enforcement duties are presumptively unreasonable."[5] *Arp v. State*, 327 Ga. App. 340, 342 (1) (759 SE2d 57) (2014). Such "[e]xigent circumstances include where an officer is in hot pursuit of a fleeing felon, where an officer

---

[5] It is undisputed in this case that Edwards did not consent to the officers' initial entry and search of her home.

8

reasonably fears the imminent destruction of evidence if entry into the residence is not immediately effected, and where an officer reasonably perceives that a suspect within the dwelling poses a risk of danger to the police or others." (Citations and punctuation omitted.) *Minor v. State*, 298 Ga. App. 391, 396-397 (1) (b) (680 SE2d 459) (2009). Finally, we must keep in mind that "[p]hysical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." (Citation and punctuation omitted.) *Little v. State*, 353 Ga. App. 549, 551 (1) (839 SE2d 15) (2020).

(a) *Protective sweep.*

> A protective sweep is a limited search of the premises primarily to ensure officer safety by detecting the presence of other occupants. . . . [O]fficers are authorized to perform a protective sweep in connection with an in-home arrest when they possess articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene.

(Citations and punctuation omitted.) *State v. Gray*, 285 Ga. App. 124, 127-128 (2) (645 SE2d 598) (2007). See also *Kirsche v. State*, 271 Ga. App. 729, 732-733 (611 SE2d 64) (2005) ("use of protective sweeps has been limited to sweeps conducted in connection with an in-home arrest . . . or where the officers have articulable facts

suggesting that an area may be harboring someone who poses a danger to them") (citations omitted).

First, there was no "in-home" arrest, which would have justified the sweep, as no one had been arrested at the time the sweep occurred. See *Gray*, 285 Ga. App. at 127-128 (2). "Instead, the undisputed evidence shows that the officers' entry into and search of the residence preceded [Neal's discovery and] arrest. . . ." *State v. Pando*, 284 Ga. App. 70, 73 (1) (b) (643 SE2d 342) (2007), overruled on other grounds, *State v. Kazmierczak*, 331 Ga. App. 817, 823 (771 SE2d 473) (2015).

Second, as the trial court found, the State failed to show that the officers possessed articulable facts that would warrant a reasonably prudent officer in believing that Edwards' home harbored an individual posing a danger to them. There was no evidence that Edwards' car, allegedly being driven by Neal, was at Edwards' home when the officers arrived. Nothing connected Neal to Edwards' home apart from the victim's tip that Neal might be found at either his apartment or Edwards' house, and as the trial court also found, the officers were not sure that Neal was not in his apartment when they entered Edwards' house. "A mere inchoate and unparticularized suspicion or hunch that the home may harbor an individual posing a danger to the officers is insufficient to support a warrantless sweep." (Citation and

punctuation omitted.) *Causey v. State*, 334 Ga. App. 170, 173 (2) (778 SE2d 800) (2015). Accordingly, the evidence supports the trial court's finding that the officers were not authorized in entering Edwards' home to conduct a protective sweep. See *Gray*, 285 Ga. App. at 127-128 (2) (officers' warrantless entry into home not justified as protective sweep where it was not incident to arrest and there was no evidence that someone was inside the house or that officers and others standing outside the house were in danger); *Pando*, 284 Ga. App. at 72-74 (1) (b) (same).

(b) *Prevent imminent destruction of evidence.* To the extent the State now contends that the warrantless entry and sweep were justified to prevent the imminent destruction of evidence by someone inside Edwards' home, the evidence presented at the bench trial does not support this contention. "[E]xigent circumstances may be found where an officer reasonably fears the imminent destruction of evidence if entry into the residence is not immediately effected." (Citation and punctuation omitted.) *James v. State*, 294 Ga. App. 656, 659 (670 SE2d 181) (2008). However, "the presence of contraband [inside a residence] without more does not give rise to exigent circumstances." (Citation and punctuation omitted.) *Curry v. State*, 271 Ga. App. 672, 675 (2) (610 SE2d 635) (2005). Compare *State v. Alford*, 347 Ga. App. 208, 214 (3) (818 SE2d 668) (2018) ("Under the automobile exception to the warrant requirement

11

imposed by the Fourth Amendment, a police officer may search a *car* without [a] warrant if he has probable cause to believe the car contains contraband, even if there is no exigency preventing the officer from getting a search warrant.") (Citation and punctuation omitted; emphasis supplied.) See also *State v. Vickers*, 339 Ga. App. 272, 273-277 (793 SE2d 167) (2016) (physical precedent only) (automobile exception did not apply to car parked in residential driveway and thus odor of marijuana emanating from car did not justify warrantless search of car absent exigent circumstances).

Here, the record simply lacks any evidence that a protective sweep was justified or that contraband was in immediate danger of destruction such that the officers were authorized to enter Edwards' home without a search warrant.[6] Accordingly, the trial court should have granted the motion to suppress. Thus, Edwards' conviction must be reversed, and the case remanded to the trial court with direction to grant her motion to suppress.

*Judgment reversed and case remanded with direction. Dillard, P. J., and Rickman, J., concur.*

---

[6] The State does not allege other exigent circumstances to justify the warrantless entry and search.